**In re MASTER KEY ANTITRUST LITIGATION.**

No. 378, Docket 75–7386.

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1975.

Decided Dec. 22, 1975.

---

Walter A. Bates, Arter & Hadden, Cleveland, Ohio, for appellant Eaton.

John W. Barnett, Wiggin & Dana, New Haven, Conn. (Charles Donelan, Bowditch & Lane, Worcester, Mass., on the brief), for appellants.

Lee A. Freeman, Jr., Freeman, Freeman & Salzman, Chicago, Ill., and H. Laddie Montague, Philadelphia, Pa. (William J. Scott, Atty. Gen. of Ill., John P. Meyer, Sp. Asst. Atty. Gen. of Ill., Theodore L. Sendak, Atty. Gen. of Ind., John F. Beckman, Jr., Sp. Asst. Atty. Gen. of Ind., Frank J. Kelley, Atty. Gen. of Mich., Edwin M. Bladen, Frederick H. Hoffecker, Asst. Attys. Gen. of Mich., Warren R. Spannaus, Atty. Gen. of Minn., Thomas R. Muck, Sp. Asst. Atty. Gen. of Minn., Robert P. Kane, Atty. Gen. of Pa., Gerry J. Elman, Deputy Atty. Gen. of Pa., Chauncey H. Browning, Jr., Atty. Gen. of W. Va., Gene Hal Williams, Deputy Atty. Gen. of W. Va., Bronson C. LaFollette, Atty. Gen. of

Wis., Marvin I. Strawn, Asst. Atty. Gen. of Wis., Evelle J. Younger, Atty. Gen. of Cal., William S. Abbey, H. Chester Horn, Jr., Deputy Attys. Gen. of Cal., Carl R. Ajello, Atty. Gen. of Conn., Norris L. O'Neill, Sp. Asst. Atty. Gen. of Conn., Curt T. Schneider, Atty. Gen. of Kan., Reid F. Holbrook, Sp. Asst. Atty. Gen. of Kan., William F. Hyland, Atty. Gen. of N. J., Bruce R. Volpe, Deputy Atty. Gen. of N. J., Adrian P. Burke, Corp. Counsel, New York City, Melvin L. Ortner, Asst. Corp. Counsel, New York City, Louis J. Lefkowitz, Atty. Gen. of N. Y., John M. Desiderio, Joseph D. Landi, Asst. Attys. Gen. of N. Y., William J. Brown, Atty. Gen. of Ohio, Ronald I. Wiseman, Asst. Atty. Gen. of Ohio, on the brief), for appellees.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

We are here again called upon to determine the appealability of certain interlocutory orders made in a complex and protracted private antitrust action. The underlying claim in the litigation is that of numerous plaintiffs, who as building owners have been purchasers and users of "builders' hardware." They contend that the defendants, who are manufacturers of builders' hardware and of lock and key systems, have conspired to reduce competition and raise prices in those markets. The conspiracy is alleged to have been national in scope. This litigation was begun over five years ago [1] and has involved at least three years of discovery.[2] It has now reached the stage where the United States District Court for the District of Connecticut, M. Joseph Blumenfeld, *Judge,* has entered an order (1) denying the defendant-appellants' motion to decertify the class action

---

1. *See City of Philadelphia v. Emhart Corp.,* 50 F.R.D. 232 (E.D.Pa.1970). There two class action designations had been sought—one by the City of Philadelphia on behalf of itself and all state, county and local governmental authorities, the other by Amherst Leasing Corporation and 45 other builder-owners of apartment houses or office buildings on behalf of a na-

tional class of owners and builder-owners of apartments, hotels, motels and office buildings. District Judge Harold K. Wood conditionally permitted the case to proceed "as a class action," the opinion not designating the class or classes.

2. *See, e. g., Amherst Leasing Corp. v. Emhart Corp.,* 65 F.R.D. 121 (D.Conn.1974).

established in *City of Philadelphia v. Emhart Corp.,* 50 F.R.D. 232 (E.D.Pa. 1970), note 1 *supra,* (2) granting plaintiff-appellees' motion for certification of class actions,[3] (3) ordering a consolidation of all the cases filed in this controversy, and (4) ordering bifurcation, *i. e.,* separate trials for the determination of liability and for the computation of damages.

■ Upon appellants' motion, the district court refused to certify any of these rulings for interlocutory appeal under 28 U.S.C. § 1292(b). Appellants argued to Judge Blumenfeld that a "generalized" showing of injury is insufficient to prove liability in an antitrust action brought under Section 1 of the Sherman Act, 15 U.S.C. § 1. They contended that particularized, individual harm to each plaintiff is a prerequisite to liability and, therefore, that it is unlikely that common issues will predominate at trial. They urged that the class action liability trial would be unmanageable and prejudicial to the defense, and that certification of the class action is therefore "serious to the conduct of the litigation," *see Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974), and involves a "controlling question of law" within the meaning of 28 U.S.C. § 1292(b). Judge Blumenfeld agreed that there was a "substantial ground for difference of opinion" on this issue, *see id.*[4] He did not believe, however, that certifying this appeal would "materially advance the ultimate termination of the litigation," *id.* He apparently weighed the likelihood of reversal as sufficiently small to justify the risk of two complete trials. Judge

Blumenfeld's refusal to certify the interlocutory appeal of his rulings is, of course, not appealable and hence not at issue here. The claim raised by appellants on this appeal is that under 28 U.S.C. § 1291 we have jurisdiction to review the rulings of the district court as "final orders." We conclude that appellants' contention cannot be sustained as to any of the rulings challenged here, and we therefore dismiss this appeal for lack of jurisdiction.

A brief exposition of the facts surrounding the litigation is necessary for a full understanding of the issues and arguments on this appeal. The order below consolidates 16 separate actions which were brought in various parts of the country by several states, cities and city agencies, as well as private and institutional building owners. Nine of these actions had been transferred to the District of Connecticut four years ago by the Judicial Panel on Multidistrict Litigation, *In re Master Key Antitrust Litigation,* 320 F.Supp. 1404 (Jud.Pan.Mult. Lit.1971).[5] That consolidation and transfer followed agreement by the parties that there were common questions of fact among the related civil actions and that the convenience of the parties, witnesses and just and efficient conduct of the litigation would be served by a transfer to a single district. The parties had further agreed that the Connecticut district would be the most logical choice since all four defendant corporations were located in or near that state. The Multidistrict Panel agreed with these conclusions in its transfer order. *See id.* at 1406–07.

The appellants are manufacturers of "master key systems." These are lock

---

3. The class actions thus certified are three in number: (1) 14 state-wide actions with each state-wide attorney general as the class representative; (2) a national class of remaining states and all their county and local governments and authorities, to be represented by the City of Philadelphia; (3) a national class of owners and builder-owners of hotels, motels, apartments and office buildings, to be represented by Amherst Leasing Corporation.

4. *Compare, e. g., In re Transit Company Tire Antitrust Litigation,* 67 F.R.D. 59 (W.D.Mo.

1975), *with In re Ampicillin Antitrust Litigation,* 55 F.R.D. 269, 275–76 (D.D.C.1972).

5. Three other actions had been previously transferred to the Connecticut district court from the Northern District of Illinois under 28 U.S.C. § 1404(a) on the theory that Connecticut was the most convenient forum. *See In re Master Key Antitrust Litigation,* 320 F.Supp. 1404, 1406 (Jud.Pan.Mult.Lit.1971).

and key systems designed specifically for a particular complex of buildings. Each system includes some keys which open only one lock in the system and "master keys" which open all or a group of locks within the system. The key systems are part of the "builders' hardware," which is sold on a contract basis for use in construction projects. The manufacturers ordinarily market the key systems through their own dealers who negotiate sales to general contractors as part of the latter's bids on construction contracts. The manufacturers also make some sales to wholesalers who resell at retail and to original equipment manufacturers who install the master key system in their own products, such as particular types of doors, before their sales. But only the sales to construction contractors are involved in these proceedings.

The appellees have alleged that appellants have violated Section 1 of the Sherman Act by entering into unlawful vertical agreements with their distributors providing that the distributors would not sell outside of their allocated territories, would not compete against other distributors of the same manufacturer, and would not bid on extensions to master key systems installed by another distributor.[6] They also allege that appellants have joined among themselves in a horizontal conspiracy, the purpose of which is to reduce competition by assisting each other in the enforcement of the vertical conspiracies.

Appellants make much of the fact that the master key system is normally sold as part of the builders' hardware package. This entire package is then marketed at a lump sum price to the general contractors. The master key system distributors typically call upon architects and general contractors to promote the use of their products and to prepare specifications for the builders' hardware required on a particular building or project. When the contract is awarded, the winning contractor will then negotiate with the distributor for the precise cost of the builders' hardware to be used in the building. In the order below specifically appealed from, the court has pointed out that "the damage claims arise from the horizontal, not the vertical, conduct." It is the alleged suppression in competition among the manufacturers which would effect the allegedly higher prices of the product.[7]

It is in this factual and briefly stated legal context that we must consider the appealability of the parts of the order below concerning (1) class certification, (2) consolidation of cases and (3) bifurcation of the trials for liability and for damages. We will consider each portion of the order separately.

 1. *Class certification.* As we have said, conditional class certification was granted in *City of Philadelphia v. Emhart Corp., supra,* prior to transfer to Connecticut of two of the 16 cases involved. Appellants sought below to have that conditional class certification set aside and to have class certification denied in the cases in which the issue had not been ruled upon. Judge Blumenfeld, however, adhered to Judge Wood's earlier certification and granted the appellees' motions for class certification. The trial judge pointed out that

---

6. Consent decrees were entered into following suits by the United States alleging such conspiracies. *See id.* at 1405–06 n. 2.

7. The principal importance of the allegedly illegal vertical restrictions upon the dealers is, presumably, that such restrictions would constitute evidence of the existence of a horizontal conspiracy to reduce competition in the distribution of this product. This is, we assume, because in the ordinary case only where a manufacturer (or a group of manufacturers) has substantial market power in the sale of a given product will it (or they) benefit from imposing marketing restrictions on the distribution of that product. On the assumption that there are a sufficient number of competitors in the master key system market so that, barring horizontal agreement, the market is a "competitive" one, the argument is that no single manufacturer would gain from imposing distribution restrictions on his own outlets *unless* he had reached a prior agreement with a predominant portion of the manufacturers in the market that the others would do so.

decertification, or certification of different classes, remains a possibility for purposes of damage determinations after the trial on liability is held.

In a succession of recent cases we have held that class action designations under Fed.R.Civ.P. 23(b)(3) are not "final orders" within the meaning of 28 U.S.C. § 1291, and therefore not appealable. *Parkinson v. April Industries, Inc.,* 520 F.2d 650 (2d Cir. 1975); *Handwerger v. Ginsberg,* 519 F.2d 1339 (2d Cir. 1975); *General Motors Corp. v. City of New York,* 501 F.2d 639 (2d Cir. 1974); *Kohn v. Royall, Koegel & Wells,* 496 F.2d 1094 (2d Cir. 1974). *See also Herbst v. International Telephone & Telegraph Corp.,* 495 F.2d 1308 (2d Cir. 1974). In these cases we have, of course, continued to recognize that the term "final order" is to be given a practical, rather than technical, construction. *See Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We have not chosen to adopt a strict rule denying appealability for class action certification orders in all cases, see *Parkinson v. April Industries, Inc., supra,* 520 F.2d at 659–60 (Friendly, *J.,* concurring),[8] recognizing that there may be "exceptional circumstances" under which interlocutory review of such orders may be appropriate. But our cases have set a high threshold to the allowance of such an appeal. We have required that three factors all be present in conjunction before it may be concluded that the requisite finality is obtained. We have allowed appeal from a class action certification order only where the class action designation was "fundamental to the further conduct of the case," where review of the order was "separable from the merits" of the action, and where the order was likely to cause "irreparable harm to a defendant in terms of time and money spent in defending a huge class action . . . ." *Parkinson v. April Industries, Inc., supra; General Motors Corp. v. City of New York, supra; Kohn v. Royall, Koegel & Wells, supra.* None of these factors is present here.

We have stated that a "class action determination is 'fundamental to the further conduct of the case' when the individual damage claim of the class representative is relatively insubstantial, so that the suit probably would not be continued as a private action." *Handwerger v. Ginsberg, supra,* 519 F.2d at 1341. *See also Parkinson v. April Industries, Inc., supra,* 520 F.2d at 657. We recognize that this definition of "fundamentality" is but a mirror-image of the "death-knell" doctrine, which applies in

---

**8.** We note in passing that at least three circuits have taken the view that class action certification orders can never be appealable as "final orders" under 28 U.S.C. § 1291. *See Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *King v. Kansas City Southern Industries, Inc.,* 479 F.2d 1259 (7th Cir. 1973) (per curiam); *Hackett v. General Host Corp.,* 455 F.2d 618 (3d Cir.), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). *See also In re Cessna Aircraft Distributorship Antitrust Litigation,* 518 F.2d 213 (8th Cir. 1975). This is the view recommended for our circuit by Judge Friendly in his concurrence in *Parkinson v. April Industries, Inc.,* 520 F.2d 650, 658–60 (2d Cir. 1975). The Ninth Circuit, in *Blackie v. Barrack, supra,* reasoned that the exceptional circumstances which justify review of a collateral order under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), cannot be present in cases challenging class action certifications because effective review of the claim of improper certification can be had at the conclusion of the trial. All of the circuits which have rejected appealability for such orders under 28 U.S.C. § 1291 have argued that the availability of the procedure for obtaining certified appeals of interlocutory orders in 28 U.S.C. § 1292(b), or the use of mandamus jurisdiction, Fed.R. App.P. 21, can provide for effective review of class action certification in many cases.

The precedents in our circuit require us, however, to apply a three-pronged test which permits appeal from such orders in a narrow range of circumstances. *See, e. g., Parkinson v. April Industries, Inc., supra.* Since, as the text indicates, the type of exceptional circumstances which are a prerequisite to appealability under this test are not present in this case, both the accepted rule in this circuit and the view proposed by Judge Friendly require the same result. As appeal lies in neither case, it is of no present consequence by which route the result is obtained.

cases where class certification is denied and the effect of the denial is to terminate all further litigation because of the small size of the individual claims. *See, e. g., Eisen v. Carlisle & Jacquelin,* 370 F.2d 119, 121 (2d Cir. 1966), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). We also recognize that, so applied, the concept of fundamentality may be subject to many of the same analytical shortcomings for which the death-knell doctrine has been criticized in the past. *See Parkinson v. April Industries, Inc., supra,* 520 F.2d at 656 n. 6 (Waterman, *J.*); *id.* at 659–60 (Friendly, *J.*, concurring); *General Motors Corp. v. City of New York, supra,* 501 F.2d at 657 (Mansfield, *J.*, concurring). Nonetheless, the rule of law in our circuit is that "fundamentality" is an important ingredient of the determination which must be made as to whether irreparable loss to the party opposing the certification may ensue from absence of an immediate appeal. *Cf. Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546, 69 S.Ct. 1221. This is because if the class action order is "fundamental" in the sense the law of our circuit employs the term, then there will, by definition, be no additional litigation costs for the appellants if the order is reversed. On the other hand, if the order is not "fundamental" to the litigation, and appellees would pursue their actions as individuals should class certification be denied, then a reversal of a certification order would not avert substantial litigation expenses for the appellant but, rather, could even multiply such costs severalfold. It is on this basis that "fundamentality" has been treated as an appropriate inquiry for the determination whether a class action certification is a collateral order which effects a final disposition of rights and which yields irreparable injury

through the absence of immediate review. *See id.*

It is plain enough that the class action order in this case is not one which is fundamental to the appellees' initiative to pursue this litigation. We anticipate that several of the appellees, which include 14 of our largest state governments,[9] can "reasonably be expected to continue the[ir] action[s] in [their] individual [capacities]," *Kohn v. Royall, Koegel & Wells, supra,* 496 F.2d at 1099, were class certification to be removed. Discovery procedures have revealed that the claims of several of the appellees alone will involve sums running into tens, if not hundreds, of thousands of dollars. Thus this case is analogous to *General Motors Corp. v. City of New York, supra,* 501 F.2d at 645, where class action status was held to be not fundamental to the litigation because the City of New York's claim was large enough to guarantee that it would have prosecuted the case alone had the order been reversed.

We also find that the appellants' attack on the class certification order is not sufficiently separable from the merits of the underlying dispute to permit an interlocutory appeal under the collateral order doctrine.[10] The gist of appellants' argument is that the certifications of the class actions will prejudice their defense at the trial on liability by allowing appellees to substitute proof of generalized harm for what appellants believe to be the statutory requirement of proof of particularized injury. They argue that each appellee must prove that the impact of the alleged conspiracy reached to and injured them as "eventual" or "final" consumers of the builders' hardware and master key systems, another way of arguing perhaps that appellees

---

**9.** The following state governments have filed complaints in this controversy: California, Colorado, Connecticut, Florida, Illinois, Indiana, Kansas, Michigan, Minnesota, New York, Ohio, Pennsylvania, West Virginia and Wisconsin. New Jersey and New York City, as well as Sturdy Home Builders, have filed individual actions which are *not* class actions.

**10.** We recognize that it was Judge Friendly's view that nearly always review of the merits will be separable from review of the class action order, *Parkinson v. April Industries, Inc., supra,* 520 F.2d 650, 659 (2d Cir. 1975) (concurring opinion), but this appears to be the exception that probes the rule.

lack standing to sue. We need not follow the path of this reasoning to its end[11] to conclude that it invokes consideration of matters which are crucial to the merits of the underlying dispute. *See In re Cessna Aircraft Distributorship Antitrust Litigation,* 518 F.2d 213, 216 (8th Cir. 1975). Surely the question of what must be proven to establish liability is not a matter which is separable from the claim for relief. It is not, therefore, a matter which can properly be before us as a collateral issue for interlocutory appeal.

We find somewhat closer the question whether appellants have established that they face irreparable harm from the defense of the class action. One of the class actions which has been certified here includes all the state, county and local governments in the United States and is estimated to have over 21,000 members. While many of the costs

---

**11.** If the appellees establish at the trial for liability that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that the appellees were consumers of that product, we would think that the jury could reasonably conclude that appellants' conduct caused injury to each appellee. *See In re Ampicillin Antitrust Litigation,* 55 F.R.D. 269, 275–76 (D.D.C.1972); *Illinois v. Harper & Row Publishers, Inc.,* 301 F.Supp. 484 (N.D.Ill.1969). The amount of such injury could then be computed at a separate trial for damages, and appropriate substratification of classes could be utilized to facilitate that determination. *See Union Carbide & Carbon Corp. v. Nisley,* 300 F.2d 561, 567 (10th Cir. 1961), *cert. dismissed,* 371 U.S. 801, 83 S.Ct. 13, 9 L.Ed.2d 46 (1962); *Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440 (E.D.Pa.1975); *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 66 F.R.D. 581, 591–92 (E.D.Pa.1975); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109, 115 (S.D.N.Y.1975); *Wainright v. Kraftco Corp.,* 54 F.R.D. 532, 534–35 (N.D.Ga.1972).

Appellants argue that the class action is unmanageable because, since each appellee has purchased the master key systems from contractors who in turn had purchased through different distributors (each of whom may have "passed on" all or only a portion of the conspiratorial overcharge), different issues of fact will predominate at both the trial for liability and the trial for damages. The diversity of the situations of the various appellees, and the possibility that wholesaler intermediaries or general contractors have absorbed some or all of the alleged overcharges, would seem, however, to be a matter that may appropriately be dealt with by further class stratification pursuant to Fed.R.Civ.P. 23(c)(1). Appellants contend, however, that the mere existence of such intermediaries renders recovery impossible for both ultimate consumers and for those persons placed in the middle of the distribution chain. We are aware that the Supreme Court has ruled that antitrust violators cannot claim, as a defense in an action brought by a direct purchaser, that the purchaser was not injured because the defendant's overcharges were passed on by the plaintiff as part of its sale price to other buyers. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). We are also aware that one court of appeals at least temporarily read *Hanover Shoe* to imply that such subsequent buyers (which, of course, would include ultimate consumers) are barred from bringing suit against the manufacturer-conspirators. *Mangano v. American Radiator & Standard Sanitary Corp.,* 438 F.2d 1187 (3d Cir. 1971). However, others have suggested that *Mangano* has given *Hanover Shoe* too literal an application, and have argued that the latter case did not intend to enshrine "privity as a requirement of the antitrust laws." *In re Western Liquid Asphalt Cases,* 487 F.2d 191, 197 (9th Cir. 1973), *cert. denied,* 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974). *See also* Note, Mangano *and Ultimate-Consumer Standing: The Misuse of the* Hanover *Doctrine,* 72 Colum.L.Rev. 394, 404–10 (1972). We find it unnecessary at this time finally to determine our position in this controversy, or even to determine whether, indeed, as appellants argue, appellees are "ultimate" consumers. We note, however, that our court has found no difficulty in permitting ultimate consumers to participate in a settlement in a drug industry price-fixing case. *West Virginia v. Charles Pfizer & Co.,* 440 F.2d 1079, 1088 (2d Cir.) (wholesalers and retailers sold to consumers at a fixed markup), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). *See also In re Multidistrict Vehicle Air Pollution M.D.L. No. 31,* 481 F.2d 122, 129 (9th Cir. 1973); *South Carolina Council of Milk Producers, Inc. v. Newton,* 360 F.2d 414, 417–18 (4th Cir.), *cert. denied,* 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966). If considerations of double recovery, *cf. Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 264, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), are paramount, it may be pointed out here that no distributors or general contractors have come forward to file suit, even if at this late date they could do so under 15 U.S.C. § 15b.

which are peculiarly associated with class action litigation must now be borne by the appellees, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (notice costs), the number of plaintiffs in this class could threaten to make discovery a prohibitive matter for the defendants. *Compare Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005 (2d Cir. 1973), *vacated and remanded,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (over two million plaintiffs), *and Herbst v. International Telephone & Telegraph Corp., supra* (over 16,000 plaintiffs), *with General Motors Corp. v. City of New York, supra,* 501 F.2d at 646 (177 plaintiffs). On the other hand, we are not considering the class action certification prior to discovery taking place. Here, except as to damages, discovery is substantially complete, and if appellants prevail on the liability issue damage discovery need not be engaged in. To the extent that appellants' argument rests on discovery costs, it comes too late. In fact, there may well be considerable economies involved in the consolidation of the various suits into these class action proceedings, economies of judicial time as well as parties' expense. Having come this far, it seems unlikely that appellants will be forced to settle by mere virtue of the costs of defense of the class actions. Accordingly, we feel that appellants are not exposed to any such extraordinary risk of irreparable harm as would merit the conclusion that interlocutory review is essential to avoid "the danger of denying justice by delay," *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950). Our conclusion is that appellants' efforts to obtain "piecemeal review," *id.,* of Judge Blumenfeld's certification orders in this case is not justified under 28 U.S.C. § 1291 and our cases.[12] Accordingly we lack jurisdiction to hear this portion of the appeal.

■ II. *Consolidation.* The issue of consolidation stands on no different footing from that of class action designation. Absent exceptional circumstances, an order of consolidation is not appealable. *Levine v. American Export Industries, Inc.,* 473 F.2d 1008 (2d Cir. 1973). We have held, however, that an order of consolidation may be a "collateral order," appealable under *Cohen v. Beneficial Industrial Loan Corp., supra,* where the order goes "beyond the permissible objective of judicial economy to deny a party his due process right to prosecute his own separate and distinct claims or defenses without having them so merged into the claims or defenses of others that irreparable injury will result." *Katz v. Realty Equities Corp. of New York,* 521 F.2d 1354 (2d Cir. 1975), *quoting Garber v. Randell,* 477 F.2d 711, 716 (2d Cir. 1973).[13] We think that this is a narrow exception, however, and only in the plainest cases of prejudice through confusion of issues should interlocutory review of these discretionary orders be allowed. *See National Association for Advancement of Colored People of Louisiana v. Michot,* 480 F.2d 547, 548 (5th Cir. 1973) (denying consolidation); *United States v. Chelsea Towers, Inc.,* 404 F.2d 329 (3d Cir. 1968) (denying consolidation); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2386 (1971).

The argument made by appellants to bring the consolidation order in this case

---

12. Even under the test espoused by Judge Mansfield in his concurring opinion in *General Motors Corp. v. City of New York,* 501 F.2d 639, 659 (2d Cir. 1974), which we view as a "balancing test" rather than one requiring that all three prongs be affirmatively established, we find that appellants have failed to establish that these orders are appealable. In our view, the "danger of denying justice by delay" of the appeal of the class action order is not so great as to justify "the inconvenience and cost of [this effort at] piecemeal review." *Id.* at 659,

citing *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152–53, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), and *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 70 S.Ct. 322, 94 L.Ed. 299 (1950).

13. Judge Friendly disagreed and would, were the questions presented anew, hold that a consolidation order is not appealable. *Katz v. Realty Equities Corp. of N. Y.,* 521 F.2d 1354 (2d Cir. 1975) (Friendly, *J.,* concurring).

within the collateral order doctrine of Katz and *Garber* is that the several appellees are differently situated in the distribution chain of the master key systems and, therefore, different issues will be important in the proof of particularized injury to each of them. This is a renewal of their "unmanageability" argument, made against the class action certification orders. *See* note 11 *supra.* Appellants' position is that in a consolidated trial for liability, distinctions among the various appellees will be lost upon the jury in the face of sweeping allegations of national conspiracy. They are concerned that mere proof that an unlawful conspiracy existed and that "generalized harm" has occurred may improperly be allowed to suffice for proof of liability. Here, as above, *see id.,* we need not microscopically examine on the bare bones of this abstract record appellants' contention that particularized injury to each appellee is a prerequisite to establishing liability in a bifurcated antitrust trial. For appellants have failed completely to suggest that a variety of separate issues applicable peculiarly to individual plaintiffs will cause confusion to the jury and prejudice to the defense. Instead, they have raised only one issue—the issue of lack of "impact" or causation or standing—and complained that that defense may apply differently to some of the plaintiffs than it will to others. We do not think that this one defense, even assuming it may have varying application (and without expressing any view as to its validity), will be so confused by consolidation as to justify immediate review of that order. We do not find here the type of "exceptional circumstances" which must be present to authorize an interlocutory appeal from the order of consolidation.[14]

■ III. *Bifurcation.* Appellants also seek review of Judge Blumenfeld's order that separate trials be held on liability and damages. Such an order is ordinarily firmly within the discretion of the trial court under Fed.R.Civ.P. 42(b). And we need not review his exercise of that discretion at this stage of the case, for an order for a bifurcated trial is likewise not appealable under the theory that it is a "final order." 9 J. Moore, Federal Practice ¶ 110.13[8] (1975); 9 C. Wright & A. Miller, *supra,* § 2392. Nor can we accept appellants' argument that this order falls within the narrow strictures of the "collateral order" doctrine. Their contention is that the costs of conducting a series of separate mini-trials as to damages will be prohibitive and will, therefore, force appellants into an unfavorable settlement. They also argue that separating the liability and damage trials will cause prejudice to the defense by facilitating the appellees' ability to sidestep proof of specific injury, and allowing a showing of generalized harm to suffice. Even assuming, *arguendo,* that these reasons bear substantially on concerns which are appropriate in determining the application of the collateral order doctrine, we cannot give credence to them. The cost of mini-trials for damages should bear equally in the minds of the appellees, as for appellants, as a reason for settling claims prior to trial. We cannot assume at this point that it is the appellants, rather than appellees, who would be compromising their meritorious position by an early settlement. Therefore we cannot conclude that appellants face the risk of irreparable injury from this order. Nor do we assume that Judge Blumenfeld will fail to identify to the jury at the trial for damages the extent to which unlawful price overcharges are recoverable by these appellees, *see* text at note 11 & note 11 *supra.* Appellants' claimed sources of irreparable harm are entirely too speculative to suffice as the basis for interlocutory re-

---

14. In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), where liability was tried separately from damages, the Supreme Court has allowed general allegations of harm to suffice at the trial for liability in a price-fixing case. *See also Bray v. Safeway Stores, Inc.,* 403 F.Supp. 412 (N.D. Cal., filed Feb. 26, 1975).

view under the collateral order doctrine.[15]

Appellants' final argument is that they will be prejudiced in their defense if the same jury does not hear both the liability and damage portions of the action. They also suggest that use of separate juries in these two trials might infringe their Seventh Amendment rights. Without in any way commenting on the validity of these arguments, we merely note that they are wholly speculative at this point. Judge Blumenfeld has indicated that one jury may hear both the liability and damage claims in this action. *Cf. Swofford v. B & W, Inc.,* 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). It would plainly be premature for us to rule on the appropriateness of using two juries where only one, in fact, may be involved. We should only note that bifurcated trials have frequently been employed with great success, *see* 9 C. Wright & A. Miller, *supra* §§ 2390–91; *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) (class action in securities litigation), even in antitrust suits, *see Goldfarb v. Virginia State Bar, supra.*

Appeal dismissed for lack of jurisdiction.

---

**15.** Appellants have also claimed that there may be geographic marketing variations which make a consolidated national liability determination prejudicial. However, we believe this contention is wholly unavailing for two reasons. First, appellees' claim is that the conspiracy has been national in scope and has achieved uniform price overcharges throughout the entire country. Second, the "marketing variation" argument will most likely be completely subsumed within the "particularized injury" defense, which we have rejected as a ground for interlocutory appeal in the text.