## In re AMPICILLIN ANTITRUST LITIGATION.

### Misc. No. 45–70.
### M.D.L. Docket No. 50.

United States District Court,
District of Columbia.

Sept. 22, 1980.

---

1. In this case, Mr. Sears, the designee of Mr. Cook, eventually acted as process server.

Tom Liddle, Antitrust Division, Patent Section, Washington, D. C., for Department of Justice.

David I. Shapiro, James vanR. Springer, Dickstein, Shapiro & Morin, Washington, D. C., for CCS plaintiffs.

Judge Arnold Bauman, Robert Dobbin, Wesley C. Fredericks, Jr., Shearman & Sterling, New York City, Richard Whiting, Daniel Plaine, Steptoe & Johnson, Washington, D. C., for Beecham Group Ltd. and Beecham Inc.

Jerome Shapiro, Alan McLean, David Hixson, Hughes, Hubbard & Reed, New York City, for Bristol–Myers Co.

Jeffrey B. Cahn, Sills, Beck, Cummis, Radin & Tischman, Newark, N. J., for Zenith Labs, Inc.

S. M. Chris Franzblau, Franzblau & Falkin, Newark, N. J., for Biocraft Laboratories, Inc.

## ORDER

CHARLES R. RICHEY, District Judge.

This multidistrict antitrust litigation is before the Court on the related issues of mode of trial and the schedule for the remainder of discovery. On April 18, 1980, the Court issued an order requesting all parties to brief several matters relevant to consideration of the mode of trial issue. In addition, several of the parties have submitted memoranda concerning the schedule for the remainder of discovery. The Court shall address these issues *seriatim* below.

## I. *Mode of Trial*

■ Rule 42(b) of the Federal Rules of Civil Procedure authorizes a district court: [I]n furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [to] order a separate trial of any claim, . . . or of any separate issue or of any number of claims, . . . or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. In addition, Federal Rule of Civil Procedure 23(d) empowers a district court in class actions to "make appropriate orders (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument . . . ." The exercise of these powers "is ordinarily firmly within the discretion of the trial court." *In re Master Key Antitrust Litigation*, 528 F.2d 5, 14 (2d Cir. 1975); 9 C. Wright & A. Miller, *Federal Practice & Procedure*, 2388, at 283 (1971). Where numerous issues are not common to all parties, or where any party will be prejudiced by a joint trial, consolidation, rather than separate trials, is improper. *See e. g. National Resources Defense Council, Inc. v. Hughes*, 454 F.Supp. 148 (D.D.C.1978); *Meeder v. Superior Tube Co.*, 72 F.R.D. 633 (W.D.Pa.1976); *Cohn v. District of Columbia National Bank*, 59 F.R.D. 84 (D.D.C.1972).

■ The mode of trial memoranda of the parties indicate disagreement on several significant issues. First, the parties evidence disagreement over whether the United States action should be consolidated for trial with 1) the City, County and State ("CCS") actions, and/or 2) the *Biocraft* and *Zenith* actions. The Court will not consolidate the *Biocraft* and *Zenith* cases with any of the remaining cases because of insufficient common issues of law and fact. In addition, consolidation of the *Biocraft* and *Zenith* cases with the other actions would raise the possibility of prejudice with respect to Beecham Group Limited and Beecham Inc. (collectively "Beecham") due to the settlement between Beecham and the United States and CCS entities. Accordingly, the Court finds that the interest of judicial economy and the avoidance of confusion and prejudice will not be served by consolidation of the *Biocraft* and *Zenith* actions with any of the remaining actions in this multidistrict litigation.

■ In considering consolidation of the CCS actions with the United States case against Bristol–Myers ("Bristol"), the Court arrives at the same conclusion. While both the CCS plaintiffs and the United States allege Bristol violated § 1 of the Sherman Act, 15 U.S.C. § 1 (1976), the similarity between the respective causes of action ends there. The United States also alleges a violation of § 2 of the Sherman Act, 15 U.S.C. § 2 (1976). *See* Preliminary Memorandum of the United States Concerning Main Theories of Violation ("U.S. Preliminary Memo"), filed June 5, 1980, at 20. The CCS plaintiffs pursue only the § 1 Sherman Act claim. *See* Preliminary Statement of [CCS] Plaintiffs' Theory as to the Unlawfulness of the Preclusion of Bulk Sales by Beecham in the Beecham–Bristol Agreements ("CCS Preliminary Memo"), filed April 4, 1980; Tr. of March 28, 1980, at 9. Consolidating the CCS actions with the government action would raise the undesirable specter of prejudice to the CCS plaintiffs as well as virtually unavoidable jury confusion. In addition, the interests of judicial economy would not be served: such a consolidated trial would likely consume more time and expense than the separate trials of the CCS and the Government actions combined. Finally, even where some identity exits between the CCS and Government cases–the claim that Bristol violated § 1 of the Sherman Act–the perceived identity is illusory. The respective theories underlying the § 1 Sherman Act claims are quite different and will undoubtedly call for different proof.[1] Again, jury confusion

1. A comparison of the § 1 Sherman Act theories of the United States and CCS plaintiffs discloses a significant dissimilarity. The Government's primary § 1 attack focuses on

may well be facilitated rather than minimized. Therefore, the Court finds that consolidation will not serve the interests of justice and shall accordingly order separate trials of the United States case and the CCS cases.

▮ Thus, there shall be a separate trial of the CCS case against Bristol followed by the separate trial of the government's case against Bristol. Thereafter, the *Biocraft* and *Zenith* actions shall go forward. The Court adopts this procedure for trials based on two related factors: 1) the CCS entities' representation that they can proceed to trial in a relatively short time, *see* Tr. of April 11, 1980, at 36–37 (D. Shapiro); and 2) considerably more time will be required to complete discovery for the United States in the § 1 and § 2 Sherman Act case. Accordingly, the order of separate trials shall be as indicated above: first, the CCS case against Bristol; second, the United States case against Bristol; and finally, the *Biocraft* and *Zenith* cases. The effect of this procedure upon the schedule for the remainder of discovery shall be discussed below.

▮ Next, CCS plaintiffs and defendant Bristol disagree over various issues involving the concept of a "bellwether" trial. As an aid to judicial economy and manageability, the Court endorses the bellwether concept. The Court does not stand alone in this position. *See e. g.* 3 Newberg, *Class Actions* § 4650, at 94 (1977); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758–62 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *In re Plywood Antitrust Litigation*, 76 F.R.D. 570, 589 (E.D.La. 1976). Indeed, where there is a relatively large number of actions and plaintiffs proceeding on the same theory or claim, as the CCS entities are here, the bellwether concept seems particularly useful and appropriate. The Court shall order implementation of the bellwether concept for the trial of the CCS actions.

▮ For a period of approximately six years, the parties have discussed the procedure of bifurcating the trial of these antitrust actions into a "liability" or "violation" stage and a "damage" stage. *See e. g.* Memorandum for Plaintiffs with respect to Mode of Trial of All Cases, filed May 7, 1974; Defendants' Joint Memorandum Proposing Trial of the Government Case First, filed April 24, 1974. Such bifurcation finds ample support in authority. *See e. g. Manual for Complex Litigation* (C. Wright & A. Miller, *Federal Practice and Procedure*, 1977), § 4.12; 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2390, at 296 (1971); 3 Newberg, *Class Actions* § 4640 (1977); *In re Master Key Antitrust Litigation*, 70 F.R.D. 23, 28–29 (D.Conn.), *appeal dismissed*, 528 F.2d 5 (2d Cir. 1975). While defendant Bristol seems to doubt the utility of such a procedure for this complex litigation, the Court does not share its skepticism. Here, the question of damages is an individual one, and thus inappropriate for consideration with the common issue of defendant's alleged violation. Because of the relatively large number of CCS plaintiffs and class members, the presentation of evidence on the extent of damage sustained by each plaintiff as a result of the defendant's alleged antitrust violation, in conjunction with the liability presentation, would hardly serve the interest of judicial economy and may well lead to significant management problems. Moreover, a verdict for Bristol at a bifurcated liability stage would obviate the need for consideration of the individual damage question. Here, the more rational and desirable procedure is to bifurcate the CCS trial into a "liability" stage, where Bristol's alleged violation of the antitrust laws would be determined, and, assuming a violation was found, a "damage" stage where each plaintiff would show the

---

the operation of the 1959 Beecham–Bristol agreement as a barrier to the entry of ampicillin into the entire broad–spectrum antibiotics market. *See* U.S. Preliminary Memo at 7–11. In contrast, the CCS entities attack the 1959 agreement as a restraint upon competition in the narrower ampicillin market. *See generally*

Plaintiffs' Preliminary Memo. The Government also challenges the effect of the 1959 agreement on the ampicillin market, but this theory of violation is secondary to its "broad–spectrum" claim. *See* U.S. Preliminary Memo at 11–12.

amount of damage sustained as a result of the violation. The issues of "liability" and "damage" are separate and distinct issues. *See In re Master Key Antitrust Litigation,* 70 F.R.D. 23, 29 (D.Conn.), *appeal dismissed,* 528 F.2d 5 (2d Cir. 1975). As such, separate trial of those issues is beyond constitutional challenge. *Gasoline Products Co., Inc. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). Accordingly, the Court shall order bifurcation for the trial of the CCS actions into a "liability" stage and a "damage" stage.

■ The question remains whether the issue of "impact" should be included in the "liability" or "damage" stage of the bifurcated proceeding. Here, "impact" or "fact of damage" is a necessary element of the plaintiffs' cause of action. *Zenith Radio Corp. v. Hazeltone Research,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). However, "fact of damage" and "amount of damage" are distinct concepts. *See Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931); *Fontana Aviation, Inc. v. Beech Aircraft Corp.,* 432 F.2d 1080, 1085 (7th Cir. 1970), *cert. denied,* 401 U.S. 923, 91 S.Ct. 872, 27 L.Ed.2d 826 (1971). It is the CCS plaintiffs' contention that the issue of "impact" is sufficiently distinct from the individual question of "amount of damage" sustained by each plaintiff or class member that trial of this issue with the issue of violation would not offend the rule enunciated in *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). The Court agrees. The CCS plaintiffs plan to prove impact upon *all* CCS plaintiffs and class members by demonstrating that Bristol's alleged violation had an across–the–board impact upon price levels in the relevant market(s). *See In re Master Key Litigation,* 528 F.2d 5, 12 n.11 (2d Cir. 1975). The fact that Bristol hopes that plaintiffs will be unable to prove impact in this manner, plaintiffs argue and the Court agrees, is no basis for depriving plaintiffs of the opportunity to try. Because the Court views the "impact" issue as sufficiently separate and distinct from the issue of "amount of damage," the Court finds no constitutional obstacle to plaintiffs' attempt to prove "impact" in this manner. Accordingly, the first trial in this bifurcated proceeding shall be a bellwether trial on Bristol's liability, including the issues of violation *and* impact.

■ Finally, the parties have exhibited disagreement on both the number and identity of the CCS bellwether actions to be tried in the initial liability (fact of violation and impact) stage of the bifurcated proceeding. The Court finds it unnecessary to decide either question and believes resolution by the parties to be possible and more desirable. However, it is evident that the parties will be unable to reach agreement unless the Court addresses the threshold issue of the nature of the CCS bellwethers to be selected for trial. The Court finds that to be truly representative of the CCS plaintiffs, the bellwether plaintiffs must have relatively complete bid records. Only if such bid records are present at the liability stage of this proceeding can the essential determination about what actually occurred in the marketplace be made. Therefore, the Court shall order that the bellwethers be chosen only from those CCS plaintiffs with relatively complete bid records. The Court is confident that the CCS entities and Bristol will now be able to stipulate to, *inter alia,* the number and identity of the bellwethers. In the unlikely event that a stipulation cannot be reached, the Court shall resolve these matters.

## II. *The Remainder of Discovery*

As noted above, several of the parties have submitted memoranda concerning the schedule for the remainder of discovery. However, due to the nature of the Court's resolution of the mode of trial issue, these memoranda are of little aid to the Court.

■ These proceedings were initiated in March 1970; yet over ten years later, pretrial discovery is not yet complete. The time has come to press forward with discovery and trial of this litigation. The CCS plaintiffs have represented to the Court that once the mode of trial issue is resolved,

they can be ready for trial of their § 1 Sherman Act case in seven months. *See* Tr. of April 11, 1980, at 36–37 (D. Shapiro). Given the limited scope of such a trial, the Court finds this estimate reasonable. Accordingly, the Court shall set trial of the CCS plaintiffs' § 1 Sherman Act case for May 18, 1981.

█ Considering the discovery completed to date, eight months should be ample time for the CCS plaintiffs and defendant Bristol to prepare for trial. However, they will be unable to do so if they are required to continue to meet the demands of discovery in the remaining cases. Therefore, the Court shall stay discovery in the United States, *Biocraft* and *Zenith* cases until further order. The Court takes this action with the expectation that the CCS plaintiffs and defendant Bristol will press forward with discovery for the May 18, 1971, § 1 Sherman Act trial.

█ With respect to the remainder of discovery between the CCS plaintiffs and the defendant Bristol, the Court herewith adopts a discovery schedule similar to the one used in the *United States v. American Telephone and Telegraph Co.*, 461 F.Supp. 1314, 1345 (D.D.C.1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). The new discovery schedule shall provide, *inter alia*, that the parties shall file three successive Statements of Contentions and Proof even the next seven months, each to become more specific than the last. The filing of the last statements shall signal the close of discovery. Due to the excessive length of time used for pre–trial discovery to date, the Court shall only grant leave for an enlargement of time with respect to the dates specified in this order to prevent manifest injustice. The Court expects the remaining discovery for the May 18, 1981 trial to commence immediately upon the issuance of this order.

An initial pretrial conference shall be set for October 10, 1980 at which time the CCS plaintiffs and defendant Bristol should be prepared to discuss, *inter alia*, 1) preliminary pretrial matters and 2) the scheduling of subsequent pretrial conferences.

In accordance with the foregoing, it is, by the Court, this 18th day of September, 1980,

ORDERED, that there shall be separate trials of the CCS case, the United States case, and the *Biocraft* and *Zenith* cases, respectively, and in that sequence; and it is

FURTHER ORDERED, that the concept of a "bellwether" trial be, and the same hereby is, implemented for the trial of the CCS entities' § 1 Sherman Act trial; and it is

FURTHER ORDERED, that the CCS entities' § 1 Sherman Act trial be, and the same hereby is, bifurcated into two stages: the first stage to be trial of the defendant Bristol's liability, including the issues of violation and impact; the second stage, if necessary, to be trial of the amount of damages sustained by each plaintiff or class member as a result of defendant's alleged violation; and it is

FURTHER ORDERED, that the CCS "bellwether" plaintiffs be selected from CCS entities with relatively complete bid records: and it is

FURTHER ORDERED, that counsel for the CCS plaintiffs and defendant Bristol confer on selection of the CCS bellwethers and report on the same to the Court, in writing, within twenty (20) days of the date hereof; and it is

FURTHER ORDERED, that each party shall file three successive Statements of Contentions and Proof, in accordance with the following schedule: the CCS plaintiffs shall file their statements on or before November 3, 1980, January 19, 1981, and April 3, 1981; and the defendant Bristol shall file their statements on or before December 22, 1980, February 23, 1981, and April 3, 1981;

Each of plaintiff's statements shall list and describe with particularity–(a) each legal argument upon which plaintiff intends to rely at trial, together with appropriate statutory references, case law, and other citations, (b) each factual contention it intends to advance at trial, (c) under each factual heading, a list of the witnesses and the documentary and other evidence which

plaintiff will use to support that contention, (d) whether such evidence is presently in plaintiff's possession, and if not, where in their view it may be found, and (e) why, in defendant's view all or part of the relief sought by plaintiffs would be inappropriate, assuming the relevant violation is proven,

Except as leave may otherwise be granted by the Court, no Statement of Contentions and Proof may enlarge upon the contentions set forth in the preceding statement, whether by broadening an existing contention or by adding a new contention. If leave to enlarge the contentions is sought based upon evidence discovered since the filing of the preceding statement, it will be granted only for good cause with respect to the second statement, and granted only to prevent manifest injustice with respect to the third statement. The Court shall have the authority to determine whether a particular statement would narrow or enlarge upon contentions made in previous statements, whether an enlargement is based upon evidence discovered since the filing of the preceding statement, and whether the applicable standard for the granting of leave has been met;

Each party's discovery shall be limited to documents and other evidence which will support the contentions specified in its most recent Statement of Contentions and Proof or which will directly rebut contentions made in the most recent statement of the opposing party;

Each party's evidence at trial shall be limited to those items of proof listed in its final Statement of Contentions and Proof, as modified by the pretrial conference of April, 1981; and it is

FURTHER ORDERED, that the first stage in the bifurcated CCS plaintiffs' § 1 Sherman Act case be, and the same hereby is, set for trial on May 18, 1981, at 10:00 a. m. in Courtroom 11, United States Court House, Washington, D.C.; and it is

FURTHER ORDERED, that discovery in and for *United States v. Bristol–Myers Co.,* 82 F.R.D. 655, *Biocraft Laboratories, Inc. v. Bristol–Myers Co.,* C.A. No. 1002–70, and *Beecham Group Ltd. v. Zenith Laboratories,* *Inc.,* C.A. No. 2457–70 be, and the same hereby is, stayed until further order of the Court; and it is

FURTHER ORDERED, that an initial pretrial conference be, and the same hereby is, set for October 10, 1980, at 10:00 a. m. in Courtroom 11, United States Court House, Washington, D.C.