501 A.2d 635

**Julia A. CAMBANIS, Administratrix of the Estate of Louis Cambanis, Deceased, Appellant,**

**v.**

**NATIONWIDE INSURANCE COMPANY, a Corporation.**

Superior Court of Pennsylvania.

Argued March 4, 1985.

Filed Oct. 11, 1985.

Reargument Denied Dec. 16, 1985.

Joseph M. Zoffer, Pittsburgh, for appellant.
Bradley Dornish, Pittsburgh, for appellee.

Before: BROSKY, WIEAND and LEDERER, JJ.*

BROSKY, Judge:

This appeal is from an order denying class certification. We conclude, *inter alia,* that the trial court erred in holding that precedent establishing liability is inconsistent with class status. Accordingly, we reverse and remand for the case to proceed as a class action.

## Facts and Procedural History

Appellant, Julia A. Cambanis, is the administratrix of the estate of Louis Cambanis, her deceased husband. The decedent was struck by a motor vehicle operated by an insured of Nationwide Insurance Company, appellee. As a result, Louis Cambanis died two days later. At the time of his death he was 85 years old, retired and receiving Social Security benefits. The accident was covered, at least in part, by the provisions of Pennsylvania's No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.*[1] Nationwide has paid survivor's loss, funeral and medical expense benefits to appellant.

Appellant submitted a claim for No-Fault work loss benefits, 40 P.S. §§ 1009.201, 202(b); and appellee denied liability for such benefits. Appellant then filed a complaint against appellee on behalf of the estate of her deceased husband and as representative of the class of all others who had been similarly wrongfully denied No-Fault work loss benefits. A hearing on the propriety of class certification was held, following which an opinion and order denying class certification were entered.[2]

* Honorable William J. Lederer, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

1. 40 P.S. § 1009.205(c).

2. Pennsylvania Rule of Civil Procedure 1710 "requires the court to file an opinion accompanying an order of certification or an order refusing to certify.... The opinion must set forth the basis for decision, including findings of fact, conclusions of law and appropriate discussion of the matters specified in Rules 1702, 1708 and 1709" which set forth the prerequisites and criteria for certification. See

*Appealability and Scope of Review*

■ An order denying class certification is a final and appealable order. *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975); *Janicik v. Prudential Insurance Co. of America*, 305 Pa.Super. 120, 451 A.2d 451 (1982). The trial court's decision concerning class certification is a mixed finding of law and fact entitled to "appropriate deference" on appeal. *Bell*, supra, 465 Pa. at 235, 348 A.2d at 739.

*Burden of Proof*

■ The burden of proof in a class certification proceeding is on the party seeking certification. *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976); *Haft v. United States Steel Corp.*, 305 Pa.Super. 109, 451 A.2d 445 (1982). Once class action allegations are well pleaded, the class proponent must present evidence of the underlying facts from which the court can conclude that the class certification requirements and criteria are met.[3] However, the class proponent need not prove separate facts supporting each requirement; rather, the proponent's burden is to sufficiently establish those underlying facts from which the court can make the necessary conclusions. *Janicik*, supra, 305 Pa.Super at 129–30, 451 A.2d at 455. This initial burden is not heavy and is thus consistent with the policy that "decisions in favor of maintaining a class action should be liberally made." *Bell v. Beneficial Consumer Discount Co.*, 241 Pa.Super. 192, 205, 360 A.2d 681, 688 (1976) (after remand) (class suits enable the assertion of many meritorious claims that might not otherwise be litigated). Accord *Janicik*, supra. *Esplin v. Hirschi*, 402 F.2d 94 at 101 (10th Cir.1968) ("in a doubtful case ... any error should be committed in favor of allowing the class action.")[4]

Explanatory Note to Pa.R.C.P. 1710. The requirements of Rule 1710 facilitate more meaningful appellate review.

3. Pa.R.Civ.P. 1701.

4. Pennsylvania's revised class action rules are an attempt to blend the best features of both Federal Rule 23 governing class actions and the Uniform Class Action Act with some novel provisions not found in

In *Janicik*, this Court explained the rationale for the low burden of proof.

> [T]he stage of proceedings at which the class certification is to be initially determined and the trial court's extensive supervisory powers over class actions obviate the need for a strict burden of proof. A court may not make the initial class action determination until after the close of the pleadings to ensure that the class proponent is presenting a non-frivolous claim capable of surviving preliminary objections. Pa.R.Civ.P. 1707.... Throughout the class action, the court has extensive powers to protect absent members and to ensure efficient conduct of the action. See, e.g., Pa.R.Civ.P. 1710 (subclasses and limiting issues); 1713 (conduct of actions); 1714 (approving settlements); 1716 (approving counsel fees).... The court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied. Pa.R.Civ.P. 1710, 1711....

*Janicik*, supra, 305 Pa.Super. at 129, 451 A.2d at 455. (Citations omitted).

### Trial Court Opinion

The opinion states that all prerequisites for certification but one were met. The trial court did not find that a class action would be a "fair and efficient method of adjudication," the last of the five prerequisites enumerated in Pa.R. Civ.P. 1702(5).[5]

either. See Explanatory Note preceding Pa.R.Civ.P. 1701. Where Pennsylvania's class action rules are fashioned upon or taken verbatim from the Federal Rule then federal case law is particularly instructive but not binding. *Klemow*, supra; *McMonagle v. Allstate Insurance Co.*, 460 Pa. 159, 331 A.2d 467 (1975) (Spaeth, J. dissenting); *Bell*, supra, 465 Pa. at 231 n. 9, 348 A.2d 737 n. 9.

5. In deciding whether a class action would be a "fair and efficient method of adjudication" the trial court considered the criteria for such a determination as set forth in Pa.R.Civ.P. 1708(a):

> In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

As the trial court saw it, liability on the part of appellee was a foregone conclusion. This followed from its interpretation of the 1983 Pennsylvania Supreme Court decision in *Freeze v. Donegal Mutual Insurance Co.*, 504 Pa. 218, 470 A.2d 958 (1983). According to the trial court *Freeze* pronounced liability on the part of the insurance company to pay work loss benefits to estates such as appellant's. The trial court then concluded that "[t]he issue in this case is not one of liability." This was seen to reduce the issues in the case to one, damages. As such, it believed the case was not appropriate for class action treatment since it required separate hearings for each member of the class.

Consistent with the trial court's interpretation of *Freeze*, there were findings that there was no risk of varying adjudications due to the mechanical and routine processing of work loss benefits as set forth in the No-Fault Act; Nationwide would not be presented with incompatible standards of conduct; and class members' interests would not

(a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

be foreclosed or impeded by individual work loss determinations.[6]

The trial court also perceived an inconvenience in requiring estates from across the Commonwealth to litigate their claims in Allegheny County—making the forum inconvenient and inappropriate.

## Analysis

The trial court held that the issue of liability was, as governed by precedent, to be decided against appellee. At the time the trial court so held, this was not an accurate statement; for that issue had yet to be decided.[7]

In concluding that appellee was liable to appellant, the trial court relied on the holding in *Freeze v. Donegal Mutual Insurance Co.*, 504 Pa. 218, 470 A.2d 958 (1983)—that an estate of a minor victim of a motor vehicle accident, otherwise covered by the No-Fault Act, was entitled to recover work loss benefits pursuant to the Act. The trial court erred in concluding that *Freeze* settled all issues of liability in this case and left only the issue of damages.

First, it was yet to be decided, for *Freeze* did not, whether the loss of the Social Security payments of a retired person was a compensable item in the No-Fault work loss calculation. It remained for our recent decision in *Matza v. Allstate Insurance Co.*, 341 Pa.Super. 166, 491 A.2d 203 (1985) to hold that a decedent's pension and Social Security benefits are "probable income" which the retiree had a reasonable expectation of receiving and, accordingly, the reduction in such payments as a result of his death, if otherwise covered by No-Fault, is properly compensable as work loss.

6. Pursuant to Pa.R.Civ.P. 1710(b), the trial court described the class in its opinion. Appellant would, if successful, represent the class of all unemployed retirees who at the time of death were receiving Social Security benefits. We concur in the narrowing of the class for proper representation based on common characteristics and issues.

7. As will be noted below, even if the trial court had correctly appraised the state of the law, it would not follow that a class action was improper.

Second, even if, as a matter of law, some people have a right to compensation, it would still have to be established, as a factual matter, that appellant is within that category. The case of *Minear v. State Farm Mutual Automobile Insurance Co.*, 309 Pa.Super 53, 454 A.2d 1078 (1983) (holding that an estate of a retired person is entitled to claim No-Fault work loss benefits and, with proper proof, collect such benefits), and *Matza*, supra, (holding that loss of Social Security and pension benefits are to be included in calculating work loss benefits under No-Fault), merely set appellate precedent which should be followed by this Commonwealth's trial courts. This precedent does not "establish" liability in any particular case. This precedent is only part of the law which must be applied to the facts as found. In short, *Matza* [8] gives appellant the right to get into the ring; *Matza* alone does not deliver a knock-out punch.

When appellant's claim is denied, as here, then she and all others similarly situated have a right to commence an action to compel payment. *Fox v. State Farm Mutual Automobile Insurance Co.*, 322 Pa.Super. 96, 469 A.2d 199 (1983). Under *Matza*, the potential for liability is now clear. Whether that potential will be realized must be determined by the court's application of the law to the facts as established. The issue of liability is, therefore, both unresolved and a common one shared by the class.

\* \* \* \* \* \*

It is not enough that there are issues common to the class in order for class action treatment to be appropriate; those common issues must predominate. Pa.R.Civ.P. 1708(a)(1). The common, predominant issue *sub judice* is the propriety of appellee's practice of denying No-Fault work loss benefits to estates of retired persons who have lost Social Security payments due to the accident. In *Nye v. Erie Insurance Exchange*, 307 Pa.Super. 464, 453 A.2d 677 (1982), this Court considered a similar issue of commonality: where an insurer refused to pay under its No-Fault policy,

8. It is *Matza*, supra, not *Freeze* which is relevant here.

we held that class action treatment was appropriate for such an issue.

If Nye is not permitted to maintain this suit, all the class members will be forced to file individual suits to vindicate their rights. To thrust numerous members of a class into separate actions would be an intolerable waste of judicial resources when the claims of all plaintiffs may be expeditiously settled in one suit. Class actions can be a fair and efficient method of resolving disputes and to subject the parties and the court system to the hazards of expensive separate litigation in this context would eviscerate the purpose of the class action as a "procedural device designed to promote efficiency and fairness in the handling of large numbers of similar claims."

*Nye,* supra, 307 Pa.Superior Ct. at 467, 453 A.2d at 678.[9]

■ In *Allessandro v. State Farm Mutual Insurance Co.,* 259 Pa.Super. 571, 393 A.2d 973 (1978), a case in many respects similar to the one at bar, we also held that a class action was proper. The cause of action was based on the reduction of uninsured motorist's payments by the insurer under the medical payments coverage. We can discern no valid ground for distinguishing the instant case from *Nye* or *Allessandro.*

\* \* \* \* \* \*

The trial court also denied certification because separate hearings on damages would, in its opinion, defeat the efficiency of the class action. "Since the loss has to be established in each case, it would require separate hearings for each member of the class."

The trial court was correct in its perception that separate damage determinations will be required; it erred, however, in concluding that this circumstance bars a class action.

It is well-established that questions as to the amount of individual damages do not preclude a class action. *ABC Sewer Cleaning,* 293 Pa.Super. 219, 438 A.2d 616 (1981);

9. See also *Lillian v. Commonwealth of Pennsylvania,* 467 Pa. 15, 354 A.2d 250 (1976); *Klemow,* supra; *McMonagle,* supra.

*Ross v. Shawmut Development Corp.*, 460 Pa. 328, 333 A.2d 751 (1975); *Janicik,* supra; 1 Newburg on Class Actions § 1155(a) and (c). If this were not so, it would be rare, indeed, that a class action would ever be certified. (How often would class members ever suffer identical damages?)[10]

■ Pennsylvania Rules of Civil Procedure 1710, 1713 and 1714 grant the court extensive powers to manage the class action. These include the ability to limit the class action as to issues,[11] divide the class into subclasses,[12] approve settlements[13] and monitor the conduct of the action.[14] In *Janicik* this Court stated that: "The court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems litigation may bring." *Janicik,* supra, 305 Pa.Super. at 142, 451 A.2d at 462. The determination of damages is an appropriate area for the exercise of these powers.

■ A trial limited to the issue of liability is an efficient method of deciding appellee's liability, generally, to the estates of Social Security recipients claiming No-Fault work loss benefits.[15] If the issue of liability is decided in favor of

**10.** Of course, even if the amount of each individual's damages happened to be identical, they might well require separate evidence of their existence.

**11.** Pa.R.Civ.P. 1710(c)(1).

**12.** Pa.R.Civ.P. 1710(c)(2).

**13.** Pa.R.Civ.P. 1714(a).

**14.** Pa.R.Civ.P. 1713(a).

**15.** The issue of liability can be separated from questions of individual damage when deciding if common issues of law or fact predominate over individual questions. *City of Philadelphia v. American Oil Co.,* 53 F.R.D. 45, 67 (D.C.N.J.1971); *Frankel v. Wyllie and Thornhill, Inc.,* 55 F.R.D. 330 (D.C.W.D.Va.1972). See also *Kronenberg v. Hotel Clinton, Inc.,* 41 F.R.D. 42 (S.D.N.Y.1966); *Eiser v. Carlisle and Jacquelin,* 391 F.2d 555 (2nd Cir.1968); *City of New York v. General Motors Corp.,* 60 F.R.D. 393 (S.D.N.Y.1973); *American Trading and Production Corp. v. Fishback and Moore, Inc.,* 47 F.R.D. 155 (N.D.Ill.1969).

For a discussion of the use of a bifurcated trial on liability and damages see *Ouilette v. International Paper Co.,* 86 F.R.D. 476 (D.Vt. 1980); *In re Plywood Antitrust Litigation,* 76 F.R.D. 570 (E.D.La.1976); *Sommers v. Abraham Lincoln Savings and Loan Assn.,* 66 F.R.D. 581

the estates, then the question of the amounts of individual damages will be considered.

■■■ Where damages may be determined by a mathematical or formula calculation and may be considered a mechanical task, then a class action may be proper. *Windham,* supra. We leave it to the trial court to determine how the damage issue should be handled, but not without observing that the insurance industry is in the business of creating and utilizing actuarial tables and routinely handles No-Fault work loss claims. The amount of damages due to each estate would appear to be a straight-forward calculation once liability is shown. The damage issue is, therefore, suitable for class action treatment.[16]

\* \* \* \* \* \*

■■■ The trial court was also concerned about concentrating the litigation in the Allegheny County Court of Common Pleas and thereby forcing estates located across the Commonwealth to come to Allegheny County to prove their individual damages.[17] The forum may, indeed, seem inconvenient, but, upon careful consideration, we conclude that it is not.

(E.D.Pa.1975); *In re Master Key Antitrust Litigation,* 70 F.R.D. 23 (D.Conn.1975), appeal dismissed, 528 F.2d 5 (2nd Cir.1975); *American Trading and Production Corp.,* supra. See also, 7A C. Wright and A. Miller, Federal Practice and Procedure §§ 1783, 1790; 3 Newberg on Class Actions § 4640, n. 16; ALI–ABA Course of Study: Federal and State and State Class Action Litigation—Recent Developments at 220–4, 231–49; Miller, An Overview of Federal Class Actions: Past, Present and Future at 56 (1977); 3B Moore's Federal Practice 2nd ed. ¶ 23.45[3], n. 35 (1969); *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I),* 81 Harv.L.Rev. 831, 835 (1960–1); *Bifurcation of Liability and Damages in Rule 23(b)(3) Class Actions: History, Policy, Problems, and a Solution,* 36 S.W.L.J. 743 (1982); *Of Legalized Blackmail and Legalized Theft: Consumer Class Actions and the Substance—Procedure Dilemma,* 47 S.Cal.L.Rev. 842, 861–3 (1974); *Reforming Federal Class Action Procedure: An Analysis of the Justice Department Proposal,* 16 Harv.J.L. 543.

16. Pa.R.Civ.P. 1708(a)(5).

17. Pa.R.Civ.P. 1708(a)(5).

Proof of damages would primarily consist of a showing of documents and not extended testimony from numerous sources.[18] The trial court may also consider the use of Pa.R.Civ.P. 1006, allowing a change of venue for damage determinations should a party so move.[19]

The trial court also supported its denial of certification on the ground that there was no risk of inconsistent adjudication in light of the *Freeze* decision, supra, and that there was no risk of other class members' interests being impeded or foreclosed. In *Janicik,* supra, this Court said that:

> Finding such risks is not essential to certifying the class, but 'if they exist, they will be forceful arguments in support of the approval of the class action.' The court below held that the principle of *stare decisis* and proper application of fundamental contract principles would eliminate any risks of inconsistent adjudications. Such reasoning ignores the rule's exhortation to address this consideration "as a practical matter." Courts may, and often do, differ in resolving similar questions presenting issues of law or fact. The precedential effect of a decision, even if incorrect, may have a chilling effect on the assertion of similar claims, and, combined with the expiring of statutes of limitation, may often "substantially impair or impede" potential litigants' ability to protect their interests. Moreover, as with the related criteria concerning the complexity and expenses of litigation, Pa.R.Civ.P. 1708(a)(6), the court may consider the parties' circumstances and respective ability to pursue separate

---

18. We note again that, if liability is established, damage calculations should be routine and likely a matter for out of court settlement.

19. The concept of considering the desirability of concentrating the litigation in a particular forum was borrowed from the federal statute. Newburg, supra, at Vol. 1, § 1160(d), states that such a concentration has two aspects: first, that it promotes judicial economy by concentrating claims in front of one court; and, second, venue consideration—whether the forum selected is the best forum to hear the claim. With the ability to transfer actions within the federal system, this factor should no longer have much force. In the case at bar there is no one Common Pleas Court which would be better to hear the action, and a limited trial on liability may obviate the concern for the forum's convenience.

actions. Appellee conducts business statewide and may thus be subject to inconsistent standards of conduct. Many class members, especially those with smaller claims, may be unable to afford the costs of protecting their interest through separate actions. All claims arise from interpretation of virtually identical contract language, so that even a small risk of inconsistent adjudications is unnecessary. The class action, when compared to separate actions under this criterion, affords the speedier and more comprehensive statewide determination of the claim, and thus, the better means to ensure recovery if the claim proves meritorious or to spare appellee repetitive piecemeal litigation if it does not.

*Janicik,* supra, 305 Pa.Super. at 143–44, 451 A.2d at 462–463 (citations and footnote omitted.)

■ For the reasons set forth in *Janicik,* we conclude that there are risks of inconsistent adjudications where several trial courts may be faced with seemingly identical cases and the resolution of one case may have a chilling effect on others. Such risks can be avoided here by a class action.[20] Accord, *Haft,* supra.

## Conclusion

In summary, we hold that common questions of law or fact predominate over any individual questions; there seems to be no size or management problems; separate actions could yield inconsistent adjudications and incompatible standards for appellee; and the forum is appropriate.

For these reasons we hold that a class action in this case would be a fair and efficient method of adjudication. Ac-

20. We note that Federal courts have disagreed with the rationale expressed in *Janicik.* In *Goldman Theatres Inc. v. Paramount Film Corp.,* 49 F.R.D. 35, 41 (E.D.Pa.1969) a federal court stated that "[t]he drafters of Rule 23 ... did not intend to create a right to a class action simply because an opinion in one suit might be cited as precedent ... in another. If this were the rule, then almost every action would be susceptible of being brought as a class action." See also *Richardson v. Hamilton International Corp.,* 62 F.R.D. 413, 420 (E.D.Pa.1974); *Landau v. Chase Manhattan,* 367 F.Supp. 992, 998 (S.D.N.Y.1973); *Alsup v. Montgomery Ward and Co.,* 57 F.R.D. 89, 92 (N.D.Cal.1972).

cordingly, we reverse, certify the class and remand for the case to go forward as a class action consistent with this opinion.

WIEAND, J., files a dissenting statement.

WIEAND, Judge, dissenting:

I respectfully dissent. I would affirm for the reasons set forth in the opinion of the trial court.