## Dearlove v. Genzyme Transgenics Corporation

*Michael S. Fettner, Jeffrey E. Goldman* and *Cletus P. Lyman,* for plaintiffs.

*Judith E. Harris, Megan E. Shafer* and *Jennifer Welding,* for defendant.

SHEPPARD JR., *J.,* December 28, 2004—Plaintiffs have filed a motion for class certification. The court has considered this motion, defendant's opposition to it, the respective briefs, counsel's arguments presented at the certification hearing held on September 14, 2004, and all matters of record. For the reasons discussed, the court will issue a contemporaneous order granting the motion and certifying the case as a class action.

## FINDINGS OF FACT

(1) Plaintiffs, George Dearlove and Annaregina Roberts, filed this putative class action alleging that GTC canceled the plaintiffs' stock options, originally granted to them pursuant to GTC's 1993 Equity Incentive Plan, in violation of the plan. Compl., ¶¶29-31.

(2) GTC is a biopharmaceuticals company with its headquarters and principal place of business at 175 Crossing Boulevard, Framingham, Massachusetts. Compl. ¶3.

(3) Previously, GTC owned a subsidiary called Primedica Corporation, also a biotechnology company with its headquarters and principal place of business in Worcester, Massachusetts. Compl., ¶5. GTC also previously owned Primedica's five subsidiaries: Primedica Worcester Inc., Primedica Cambridge Inc., Primedica Argus Research Laboratories Inc., Primedica Redfield

Inc., and Primedica Rockville Inc. Compl., ¶4. (Primedica Corporation and its subsidiaries will be referred to in this opinion, collectively, as Primedica.)

(4) At all relevant times, plaintiffs have been employed by Primedica Argus Research Laboratories Inc. Compl., ¶4; def's motion for summary judgment, p. 9. In February 1996, Mr. Dearlove entered into a severance agreement with GTC, Primedica's parent corporation at the time. Def's motion, Green aff., exhibit 8.

(5) In 1993, GTC instituted an incentive stock option plan entitled the 1993 Equity Incentive Plan to award stock options to employees of GTC and its affiliates. Compl., ¶¶6, 9.

(6) The plan stated that its purpose was to "attract and retain key employees and consultants to provide an incentive for them to assist [GTC] to achieve long-range performance goals, and to enable them to participate in the long-term growth of [GTC]." Pltfs' response to def's motion for summary judgment, exhibit 2, §1.

(7) The plan defined "affiliate" to mean any business entity in which GTC owned directly or indirectly 50 percent or more of the total combined voting power or had a significant financial interest as determined by the committee which comprised GTC's Board of Directors or members of that board. Pltfs' response, exhibit 2, §2. Under this definition, affiliates included Primedica, and therefore, GTC awarded stock options pursuant to the plan to employees of Primedica, including plaintiffs.

(8) During the period from 1993 until 2000, GTC issued stock options to George Dearlove eight times, in different amounts and at varying prices per share. Compl., ¶6 and exhibits A, B (Notice of grant of stock options and option agreement, reflecting some stock options

which would expire on May 19, 2005 and some of which would expire on May 24, 2010); def's motion, p. 10 and Nagle aff., exhibit 1; pltfs' response, exhibit 20. During the same period of time, GTC issued stock options to Annaregina Roberts seven times, in different amounts and at varying prices per share. Compl., ¶6; def's motion, p. 10 and Nagle aff., exhibit 1; pltfs' response, exhibit 21. GTC gave plaintiffs several documents each time it issued plaintiffs stock options, including a notice of grant of stock options and option agreement, the plan prospectus, and incentive stock option terms and conditions (also known as the reverse side of the "incentive stock option certificate" or "award agreement." Compl., ¶¶7-8 and exhibit C, p. 5; pltfs' response, exhibits 20, 21; def's motion, p. 10.

(9) On February 6, 2001, GTC entered into a stock purchase agreement with Charles River Laboratories International Inc. to sell all of the capital stock of Primedica.[1] The closing of the sale occurred on February 26, 2001. Def's motion, p, 9.

(10) According to the parties' joint stipulation, on March 30, 2001, Charles River merged all of the Primedica subsidiaries into Primedica, and then merged Primedica into Charles River. Def's opposition to class certification, exhibit 1, ¶4.

(11) GTC states that it has never had any corporate affiliation with Charles River. Def's motion, p. 9.

---

1. TSI Corporation held Primedica's capital stock and GTC, in turn, held TSI's capital stock, so TSI was another party to the stock purchase agreement for the sale of Primedica. Def's motion, Green affidavit, exhibit 1 (stock purchase agreement); pltfs' response, Bullock deposition, p. 13.

(12) Significantly for plaintiffs, the stock purchase agreement states that all options issued by GTC to optionees, other than to certain identified individuals holding management positions, would terminate according to the terms of the options. Def's motion, Green aff., exhibit 1.

(13) On March 9, 2001, GTC contends that it notified Primedica employees who held stock options that they had until May 26, 2001 to exercise their options that were vested as of February 26, 2001, the date that the sale of Primedica to Charles River closed. Def's motion, Nagle aff., exhibit 4. Plaintiffs dispute that GTC gave such notice to any Primedica employee from Pennsylvania.

(14) In any event, stock options held by Primedica employees which were not exercised by May 26, 2001, were canceled by GTC. Compl., ¶31. Specifically, if an optionee held a stock option that was vested as of February 26, 2001, and the optionee did not exercise it by May 26, 2001, GTC canceled that option. If an optionee held a stock option that was unvested as of February 26, 2001, GTC determined that the option could not be exercised and canceled it. Def's motion, p. 11. On May 26, 2001, GTC canceled stock options held by plaintiffs. Def's motion, pp. 12-13; see also, def's motion, Nagle aff., exhibit 6.

(15) On November 13, 2001, Dearlove and Roberts filed the complaint on behalf of a putative class. Compl., ¶13.

(16) In their motion for class certification, the plaintiffs define the "class" as: "All employees of Primedica Corporation and it[s] subsidiaries who, as of February 7, 2001, had been awarded stock options and who had not yet exercised their options, excluding members of the

Primedica management team." Pltf's motion for class certification, p. 1.

(17) The parties contend that the "putative class comprises approximately 625 persons who were employees of Primedica Corporation and its subsidiaries as of February 7, 2001 (the date on which GTC announced its sale of Primedica Corporation and its subsidiaries to Charles River Labs), and who, as of that date, had unexercised employee stock options in GTC." Joint stipulation, ¶1. The parties further contend that the "putative class does not include Peter Glick and the six members of the Primedica Corporation management team as of February 26, 2001 (the date on which GTC sold Primedica to Charles River Labs), whose options were treated differently from the putative class members in connection with the divestiture of Primedica." Joint stipulation, ¶1.

(18) The complaint alleges three counts against defendant GTC: breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment. Compl., ¶¶28-36, 37-42, 43-47.

(19) On September 14, 2004, this court held a class certification hearing pursuant to Rule 1707 of the Pennsylvania Rules of Civil Procedure.

## DISCUSSION

The Pennsylvania Rules of Civil Procedure provide that a motion for class certification is a procedural question rather than a question of substantive law. See *Eisen v. Independence Blue Cross,* 62 D.&C.4th 279, 297 (Phila. Cty. (Herron, J.) July 26, 2002), citing Pa.R.C.P. 1707—Explanatory note 1977. The parties agree that

Pennsylvania law governs whether, procedurally, this case should be certified as a class action. See pltfs' motion for class certification, p. 1; def's opposition to motion for class certification, p. 2 n.2.[2]

Rule 1702 sets forth five prerequisites for the certification of a class:

"One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709;

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708." Pa.R.C.P. 1702.

The plaintiffs bear the initial burden of proving the elements of Rule 1702. However, the burden "is not heavy and is thus consistent with the policy that 'decisions in favor of maintaining a class action should be liberally made.'" *Eisen,* 62 D.&C.4th at 298, citing *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 45, 501 A.2d 635, 637 (1985). (further citations omitted)

---

2. The defendant asserts, and plaintiffs do not dispute, that Massachusetts law governs issues of contract interpretation in this case. Def's opposition to motion for class certification, p. 2 n.2.

## (1) *Numerosity*

Rule 1702's first prerequisite of numerosity tests whether "the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should plaintiffs sue individually." *Baldassari v. Suburban Cable TV Co. Inc.,* 808 A.2d 184, 190 (Pa. Super. 2002) (citations omitted), *appeal denied,* 573 Pa. 694, 825 A.2d 1259 (2003). The plaintiff seeking class certification "need not plead or prove the actual number of class members, so long as he is able to define the class with some precision and provide sufficient indicia to the court that more members exist than it would be practicable to join." *Baldassari,* 808 A.2d at 190 (quotations omitted), citing *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 132, 451 A.2d 451, 456 (1982).

The parties have agreed that the "putative class comprises approximately 625 persons." Joint stipulation, ¶1. In fact, defendant's counsel has already provided records of names and addresses of putative class members. Pltfs' memo. of law in support of motion for class certification, p. 20, and exhibit 5. If the 625 putative class members were to sue individually, it would certainly drain the resources of the court as well as the litigants. Given these individuals' causes of action and the facts underlying them, the filing of hundreds of individual lawsuits would be unnecessary and inefficient. In addition, defendant's counsel's suggestion at oral argument that numerosity fails because the plaintiffs have not proven that any of the other putative class members agree with

plaintiffs' claims is unpersuasive.[3] Furthermore, Pennsylvania class action procedure permits putative class members to opt out of the class so that any putative class member who disagrees with the claims may exclude themselves from this action. Pa.R.C.P. 1711.

### (2) *Commonality*

Next, the court must determine whether the plaintiffs' claims present "questions of law or fact common to the class." Pa.R.C.P. 1702(2). Our Superior Court has explained the commonality prerequisite as follows:

"The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all. . . . While the existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, there must be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding. . . . Moreover, claims arising from interpretations of a form contract generally give rise to common questions." *Baldassari,* 808 A.2d at 191. (quotations and citations omitted)

---

3. As an aside, the plaintiffs have presented an e-mail dated March 13, 2001 from Carol Kline, the director of human resources of GTC, which states: "At the current price, you won't have to worry about a lot of activity. You can cut the hostility with a knife. At this point, I'd be more shocked if there *wasn't* a class action suit." Pltfs' reply brief in support of motion for class certification, exhibit 14. (emphasis included) Although this e-mail is hardly definitive proof that the putative class members all agree with plaintiffs' claims, it does indicate Ms. Kline's perspective that displeasure was widespread among the optionees.

Furthermore, " 'class actions may be maintained even when the claims of members of the class are based on different contracts' so long as 'the relevant contractual provisions raise common questions of law and fact and do not differ materially.' " *Janicik,* 305 Pa. Super. at 133, 451 A.2d at 457. (citations omitted)

The defendant argues that the commonality requirement cannot be satisfied in this case because there exist factual issues unique to each individual putative class member. The defendant relies on this court's denial of the defendant's motion for summary judgment wherein the court decided that section 8 of the plan did not directly address the issue of what would happen to unexercised stock options in the event of the sale of Primedica's capital stock, and that the plan documents would require interpretation. The defendant asserts that when a contract is ambiguous, Massachusetts law requires that the fact-finder consider extrinsic evidence to interpret the contract, including, in this case, what each putative class member thought the plan meant. Def's opposition to motion for class certification, pp. 14-15, 18-19. The defendant argues that if certain optionees testify that they understood the plan to provide that their option rights would terminate if Primedica were sold, then those individual optionees' understanding would control how the plan documents should be interpreted. *Id.* at pp. 14-15, 17. Thus, the defendant concludes that the evidence in this case will consist of the answers to individual questions, and common issues and common proof will not predominate.[4]

4. In support of this argument, the defendant cites *Gamatero v. Banc of Am. Auto Finance Corp.,* 2003 WL 22235352 (Cal. App. Sept. 30, 2003); *Adams v. Kansas City Life Insurance Co.,* 192 F.R.D. 274 (W.D.

Contrary to the defendant's argument, to decide whether the commonality prerequisite for class certification has been satisfied, the relevant issue is that the plaintiffs have alleged a single course of conduct by the defendant against the entire class which may have breached the plan documents, unjustly enriched the defendant and constituted a breach of the defendant's covenant of good faith and fair dealing. The contracts at issue—including the plan, the notice of grant of stock options and option agreement, the plan prospectus, and the incentive stock option terms and conditions (or award agreement)—were all substantially the same for each of the putative class members. The relevant language to be interpreted in these plan documents are the same for each of the putative class members.

Our Commonwealth's appellate courts have granted class certification in analogous circumstances. In *Janicik v. Prudential Insurance Corp. of America,* 305 Pa. Super. 120, 451 A.2d 451 (1982), the plaintiff claimed that the defendant insurer misinterpreted a payment period definition which was substantially the same in eight of the life insurance policies sold to class members, and wrongfully denied benefits to the class. In that case, our Superior Court reversed the trial court and certified the case as a class action. The court held that: "[c]ommon questions will generally exist if the class members' legal grievances arise out of the 'same practice or course of conduct' on the part of the class opponent." *Id.* at 133, 451 A.2d at 457. (citation omitted) The court found that commonality existed despite the fact that there were eight

---

Mo. 2000) and *Hayes v. Motorists Mutual Insurance Co.,* 370 Pa. Super. 602, 537 A.2d 330 (1987). For the reasons discussed, the court does not find the defendant's argument persuasive.

different policies because "[a]ll eight riders have virtually identical language defining the duration of benefits, and appellee [insurer] admits applying a similar interpretation to all of them." *Id.* at 133-34, 451 A.2d at 457. Similarly, in this case, the language to be interpreted is the same for all of the class members, and the defendant's action in canceling the stock options was the same for every class member.

In *Foust v. SEPTA,* 756 A.2d 112 (Pa. Commw. 2000), the plaintiffs alleged that the defendant was liable to the class for medical monitoring as a result of the exposure of the class members to polychlorinated biphenyls (PCBs) at a railroad yard. The Commonwealth Court affirmed the trial court's certification of the case as a class action. On appeal, the defendant argued that the commonality prerequisite was defeated because the cause of action for medical monitoring required individual analysis of class members' exposure to the PCBs, class members' level of risk, proximate causation, and the efficacy and necessity of monitoring for each class member. *Id.* at 119. Despite all of these individual questions, the court held that the commonality prerequisite was satisfied because the "plaintiffs' claims arise from the same course of conduct and . . . can be efficiently and economically proven in one cause of action." *Id.* at 120. This court believes that if the individual questions relating to medical monitoring for a class which the Commonwealth Court contemplated might, conceivably, number in the thousands did not defeat commonality, then certainly commonality exists in this case where the defendant engaged in a single course of action by interpreting the same plan language for each of the class members and by canceling stock options for each of the class members based on that interpretation.

Recognizing that the procedural aspects of the class certification are governed by Pennsylvania rules and law, and only the substantive issues of law are governed by Massachusetts law, this court nonetheless observes that Massachusetts courts also search for a single course of conduct on the part of the defendant as part of the analysis of the commonality prerequisite for class certification. The Superior Court of Massachusetts at Worcester has held that: "The commonality requirement is generally satisfied where questions of fact and law concern standardized conduct by defendants toward all or most of the proposed class members." *Eldridge v. Provident Companies Inc.,* 11 Mass. L. Rep. 417, 2000 Mass. Super. Lexis 163, \*20 (Mass. Super. 2000). In *Eldridge,* the court granted the plaintiffs' motion for nationwide class certification pursuant to Mass. R.C.P. 23[5] where the plaintiffs had alleged that the defendants engaged in a "single, general course of conduct that unlawfully breached the agreements signed by all the potential plaintiffs." *Id.* at \*19.

In *Weld v. Glaxo Wellcome Inc.,* 434 Mass. 81, 746 N.E.2d 522 (Mass. 2001), the Supreme Judicial Court of Massachusetts affirmed the grant of the plaintiffs' motion for class certification pursuant to Mass. R.C.P. 23 where the plaintiffs alleged a "single course of conduct"

---

5. Under Mass. R.C.P. 23, a plaintiff must show that (1) the class is sufficiently numerous to make joinder of all parties impracticable, (2) there are common questions of law and fact, (3) the claim of the named plaintiff representative is typical of the claims of the class, and (4) the named plaintiff will fairly and adequately represent the interests of the class. Also, the plaintiff must show that common questions of law and fact predominate over individualized questions and the class action is superior to other available methods for fair and efficient adjudication of the controversy.

which may have violated sections of the Massachusetts statutes and constituted a tortious misappropriation for commercial gain of plaintiffs' personal information. The court in *Weld* did not preclude certification even though the letters at issue varied from plaintiff to plaintiff because the common issues predominated over the varying content of each individual letter. *Id.* at 92, 746 N.E.2d at 531. In addition, the court held that the individual, subjective reaction of each of the class members who received a letter did not bar class certification because liability could be established without any such evidence. *Id.* at 92, 746 N.E.2d at 531.

Here, defendant also contends that the commonality requirement is defeated because the damages in this case will require "extensive, individualized testimony" of each class member. Def's opposition to motion for class certification, pp. 19-22. Courts have held that where the determination of damages requires mini-trials for each class member, class action treatment is not appropriate. *Klusman v. Bucks County Court of Common Pleas,* 128 Pa. Commw. 616, 631, 564 A.2d 526, 534 (1989), *aff'd,* 524 Pa. 593, 574 A.2d 604 (1990) (class certification denied where plaintiffs alleged that court had overcharged minimal postage costs to the putative class numbering 108,107 claims); *Savage Hyundai Inc. v. North American Warranty Services Inc.,* 60 D.&C.4th 156, 183 (Berks Cty., Sept. 24, 2002) (class certification denied where damages to be proven would require evidence for each plaintiff car dealership regarding what labor was performed for customers who purchased the defendants' extended vehicle service contracts, what materials were supplied, and whether the claims submitted by the customers were valid).

Conversely, courts have held that class action treatment is, in fact, appropriate where damages can be determined by a "mathematical or formula calculation." *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 52, 501 A.2d 635, 641 (1985) (class certification was appropriate even where damages related to the plaintiffs' claim for no-fault work loss benefits against the defendant insurers would require an inquiry into whether each class member suffered a loss); see also, *Phillips v. Philadelphia Housing Authority,* civ. a. no. 00-4275, 2002 U.S. Dist. Lexis 11414, *10 (E.D. Pa. 2002) (class certification pursuant to Fed. R.C.P. 23 granted even where damages for the approximately 1,000 member class would require inquiry regarding each class member's earnings, work history, duration of employment, and rent due over the relevant time period); *Walsh v. Pittsburgh Press Co.,* 160 F.R.D, 527, 531 (W.D. Pa. 1994) (class certification pursuant to Fed. R.C.P. 23 granted even where damages for the 300-member class would require inquiry regarding each class member's length of work service, and application of formulas to calculate dismissal benefits, severance pay, vacation and bonuses for each class member). Further, our Superior Court in the *Cambanis* case observed: "It is well established that questions as to the amount of individual damages do not preclude a class action. . . . If this were not so, it would be rare, indeed, that a class action would ever be certified. (How often would class members ever suffer identical damages?)" *Cambanis,* 348 Pa. Super. at 50-51, 501 A.2d at 640. (citations and footnote omitted)

In this case, the plaintiffs and defendant dispute whether the determination of damages would preclude class certification. However, both the plaintiffs and de-

fendant rely on the same methodology to measure damages. The defendant and its economist expert, Brian Sullivan Ph.D., rely on the Black-Scholes method of valuing stock options,[6] (def's opposition to motion for class certification, p. 20 and exhibit 20) as do the plaintiffs and their economist expert, Jeffrey F. Jaffe Ph.D. (Pltfs' motion for class certification, pp. 7-8 and exhibit 10.)

According to the parties' experts' reports, the Black-Scholes method is simply a formula which considers certain variables or factors in order to value what options are worth at a given point in time. Dr. Jaffe explains that the variables in the formula are: (1) the current stock price, (2) the exercise price, (3) the time between the date of valuation and the expiration date of the option, (4) the interest rate over the life of the option, (5) the expected dividends over the life of the option, and (6) the standard deviation of the underlying stock. Pltfs' motion for class certification, exhibit 10, p. 2.

Dr. Jaffe's explanation of the variables is consistent with the explanation of the formula by the Royal Swedish Academy of Sciences which, in 1997, awarded a Nobel Prize to Professor Scholes and posthumously, to Professor Black for their Black-Scholes formula.[7] As described by the Nobel Prize press release, the variables defined in the formula are: (1) the share price today, (2) the exercise price, (3) the time to maturity, (4) the risk-free interest rate, (5) the probability that the option will

6. The Black-Scholes formula is described in the article by Fischer Black and Myron S. Scholes, "The Pricing of Options and Corporate Liabilities," *Journal of Political Economy,* vol. 81, pp. 637-54 (1973).

7. See http://nobelprize.org/economics/laureates/1997/press.html.

be exercised, and (6) the volatility of the share price (measured by its standard deviation). See n.5 *supra.*

Dr. Jaffe's list of variables is also consistent with Dr. Sullivan's explanation of the factors in an expert report he wrote in a case called *Kevin Denny v. Primedica Argus Research Laboratories Inc.,* April 2000, no. 3792 (C.C.P. Phila.). In his report dated January 17, 2002, Dr. Sullivan wrote that factors to be considered in the Black-Scholes analysis were: (1) the price of the underlying stock, (2) the exercise or "strike" price, (3) the duration, (4) the risk-free rate of return on United States government securities, and (5) the volatility or variance of the underlying stock. Pltfs' reply in support of motion for class certification, exhibit 15, pp. 3-4.[8]

In this case, however, Dr. Sullivan expands the number of factors which he contends are considered in the Black-Scholes formula. Dr. Sullivan then divides these factors into two categories—those factors which are susceptible to a formula calculation (appropriate for class action treatment), and those factors which require individualized analysis (inappropriate for class action treatment). Def's opposition to motion for class certification, exhibit 20, pp. 3-6.

Dr. Sullivan states that the first category of Black-Scholes factors susceptible to formulaic calculation are: (1) the number of unvested and vested options the plaintiff held as of the date of the divestiture, (2) the dates those options were granted, and the number of options granted on each date, (3) the strike price of each option, (4) the number of vested options the plaintiff exercised

---

8. See also, *Segen v. Westcliff Capital Management LLC,* 299 F. Supp.2d 262, 269 n.7 (S.D.N.Y. 2004) (lists Black-Scholes variables).

after the February 26, 2001 divestiture, (5) the remaining duration of each option, (6) the risk-free rate corresponding to each option, (7) the volatility of the underlying stock, (8) GTC's known dividend yield (0 percent), and (9) a discount to reflect the non-marketability of the options that were canceled. *Id.* at pp. 3-4. Thus, the defendant concedes that if one were to apply the Black-Scholes analysis as of a certain date, the factors in this first category would be appropriate for class action treatment.[9] Def's opposition to motion for class certification, pp. 20-21.

However, Dr. Sullivan further contends that there exists a second category of factors to be considered in the Black-Scholes formula which requires individualized inquiry, and those factors are: (1) the date each plaintiff left the employ of Primedica and Charles River Labs, (2) the circumstances of each plaintiff's termination of employment with Primedica or Charles River Labs, (3) each plaintiff's risk aversion and investment portfolio diversification, (4) each plaintiff's purchase of GTC stock after February 26, 2001, and (5) the number of stock options awarded to each plaintiff by Charles River Labs on August 1, 2001, and the terms of such awards. Def's opposition to motion for class certification, exhibit 20, pp. 4-6. The defendant argues that these factors preclude class certification because they require individualized inquiry at trial, and cannot be determined on a class-wide

9. At this point, the court takes no view regarding the appropriate date when to apply the Black-Scholes formula to determine damages, if any, in this case; rather, the court merely concludes that the formula might readily be applied to each member of this putative class as of any date relevant to the instant case.

basis. Def's opposition to motion for class certification, pp. 21-22.

The court is not persuaded that this second category of factors precludes class certification because they are either irrelevant to the Black-Scholes formula which the defendant seeks to apply, or they relate to the duration of the options variable, about which evidence may be acquired efficiently, without an unduly taxing administrative burden. Specifically, the third, fourth and fifth factors of Dr. Sullivan's second category of factors—(3) each plaintiff's risk aversion and investment portfolio diversification, (4) each plaintiff's purchase of GTC stock after February 26, 2001, and (5) the number of stock options awarded to each plaintiff by Charles River Labs on August 1, 2001, and the terms of such awards—are not relevant to the established Black-Scholes formula. The Black-Scholes formula contains certain defined variables, and these factors are not included. For example, any *Charles River options* granted to the plaintiffs after the optionees' GTC options were canceled have no bearing on what the Black-Scholes formula would require to determine what the *GTC options* were worth at a given point.

In addition, the first and second factors of Dr. Sullivan's second category—(1) the date each plaintiff left the employ of Primedica and Charles River Labs, and (2) the circumstances of each plaintiff's termination of employment with Primedica or Charles River Labs—relate to the duration of the options. The duration factor may or may not vary among class members, and the determination of duration may or may not require some individual research. However, even if the duration variable does require individual analysis as the defendant

contends, the inquiry would consist primarily of researching human resource records which should provide dates of termination, and whether termination was due to death, disability, or for cause, for example. The court is persuaded that the common questions relating to damages predominate over any individual questions, and the commonality requirement is satisfied.[10]

## (3) *Typicality*

The third prerequisite is whether the claims or defenses of the representative parties are typical of the claims or defenses of the class. Pa.R.C.P. 1702(3). Regarding this analysis, our Superior Court has stated:

"This factor requires that the class representative's overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that his pursuit of his own interests will advance those of the proposed class members." *Baldassari,* 808 A.2d at 193, citing *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super. 441, 458, 500 A.2d 1137, 1146 (1985) and *Janicik,* 305 Pa. Super. at 134, 451 A.2d at 457.

The defendant argues that the typicality requirement cannot be satisfied for the same reason as discussed above, namely, that it will be necessary to analyze the testimony of each of the putative class members regarding their subjective understanding of the terms of their

---

10. Hypothetically, for example, even if a class member terminated employment at Primedica between February 26, 2001 and May 26, 2001, and the plan documents held that the duration of that individual's options would have been shortened, acquiring that evidence would not preclude class certification because all of the other variables for damages are common class-wide and predominate over any individual questions.

stock options, and plaintiff has failed to prove that the class representatives' claims are typical of the other class members.

The court is persuaded that the causes of action brought by the representative parties are typical of the putative class members' claims because all were granted stock options by GTC in the course of their employment by Primedica and its subsidiaries, and all had their unexercised stock options terminated by GTC under the circumstances of GTC selling the capital stock of Primedica to Charles River. The representative parties' causes of action against GTC—breach of contract, breach of good faith and fair dealing, and unjust enrichment—are typical of the claims which the putative class members also hold against GTC. In pursuing their own claims to recoup the value of their canceled stock options, the representative parties will advance the claims of the class members. Thus, the requirement of typicality is satisfied.

(4) *Representative Parties Will Protect Class Interests*

The court next evaluates whether the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709, Pa.R.C.P. 1702(4). Rule 1709's criteria are:

"(1) whether the attorney for the representative parties will adequately represent the interests of the class,

"(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

"(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed." Pa.R.C.P. 1709.

Counsel who have litigated on behalf of the representative parties have and will continue to adequately represent the interests of the class. "Generally, until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458. (citation omitted) "Courts may also infer the attorney's adequacy from the pleadings, briefs, and other material presented to the court, or may determine these warrant further inquiry." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 459. (citations omitted)

Plaintiffs' counsel, Messrs. Cletus Lyman and Michael S. Fettner, as well as their co-counsel, Mr. Jeffrey E. Goldman, are experienced, capable and professional litigators. So far in this litigation, plaintiffs' counsel have successfully defended GTC's petition to dismiss, GTC's motion to reconsider the denial of the petition to dismiss, and GTC's motion for summary judgment. According to Mr. Lyman's affidavit attached to the motion for class certification, the firm of Lyman & Ash has "over 30 years of litigation experience," including much jury trial experience and class action experience. Lyman affidavit, ¶¶5-12. In addition, Mr. Lyman states that he and Mr. Goldman are experienced in litigating stock option actions as well. Lyman affidavit, ¶5. Finally, the defendant presents no challenge to the competence of plaintiffs' counsel. The court is confident that plaintiffs' counsel will adequately represent the interests of the class.

In addition, there is no indication that any of the representative parties have a conflict of interest in the maintenance of the class action. "Because of the difficulty of proving a negative, courts have generally presumed that no conflict of interest exists unless otherwise demon-

strated, and have relied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict." *Janicik,* 305 Pa. Super. at 136-37, 451 A.2d at 459. (citations omitted) The court, therefore, presumes the lack of a conflict of interest. Also, just as Mr. Dearlove has vouched in his affidavit, the court has no reason to doubt that he and Ms. Roberts have and will represent the class fairly and adequately.

In addition, the requirement that the representative parties have adequate financial resources to assure that the interests of the class will not be harmed is satisfied. In this case, plaintiffs' counsel have advanced the costs of this litigation to the class representatives. Lyman affidavit, ¶¶13-14. Where an attorney for a class representative ethically advances costs and expenses to the representative, the adequate financing requirement of the certification test is met. *Weinberg v. Sun Company Inc.,* 740 A.2d 1152, 1171 (Pa. Super. 1999), *aff'd in part and rev'd in part on other grounds,* 565 Pa. 612, 777 A.2d 442 (2001).

### (5) *Class Action Provides a Fair and Efficient Method for Adjudication*

The final prerequisite for class certification is whether a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708. Rule 1708 provides a series of factors to consider, and according to our Superior Court, "they are not exclusive and their importance may vary according to the circumstances." Pa.R.C.P. 1708; *Janicik,* 305 Pa. Super. at 141, 451 A.2d at 461. (citations omitted) Rule 1708 states:

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expanses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

"(b) Where equitable or declaratory relief alone is sought, the court shall consider

"(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

"(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

"(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b)." Pa.R.C.P. 1708.

"In determining fairness and efficiency, the court must balance the interests of the litigants, present and absent, and of the court system." *Janicik,* 305 Pa. Super. at 141, 451 A.2d at 461. (citations omitted) The court determines that certifying the action as a class action is fair and efficient based on the seven factors analyzed below.

First, common questions of law or fact predominate over any question affecting only individual members. The question of whether the unexercised stock options held by the class representatives and the putative class members were improperly terminated by GTC in violation of the plan and award agreement predominates over any individual questions. Any individualized questions such as how many stock options a particular putative class member was granted, or the amount of damages owed to each putative class member, are not fatal to the class. Significantly, the plan, award agreement and all relevant documents were substantially the same for the entire putative class. Whether the interpretation of those documents points to a breach of contract, a breach of good faith and fair dealing, or unjust enrichment, consti-

tute common questions which predominate over questions affecting only individual class members.

Second, the size of the class and the difficulties likely to be encountered in the management of the action as a class action are not insurmountable. The parties have stipulated that the "putative class comprises approximately 625 persons who were employees of Primedica Corporation and its subsidiaries as of February 7, 2001." Joint stipulation, ¶1. A class of approximately 625 should not present any insurmountable administrative difficulties which would bar certification.

Third, the prosecution of separate actions would create a risk of inconsistent adjudications. As our Superior Court recognizes, "[c]ourts may, and often do, differ in resolving similar questions presenting issues of law or fact." *Janicik,* 305 Pa. Super. at 143, 451 A.2d at 462. Here, since the putative class members live in many different states (plaintiffs' counsel allege 15 different states), the risk of inconsistent adjudications by the trial courts in those states is likely. In that scenario, GTC could be liable for breach of contract to some individuals, and not liable to others, notwithstanding that the same plan documents were at issue. Also, rulings against individuals on the breach of contract issue in one trial court could, as a practical matter, substantially impair or impede the interests of other individuals.

Fourth, Rule 1708 instructs the court to consider the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues. Here, plaintiffs are not aware of any such litigation, and the defendant does not raise any challenge to certification on this basis. Pltfs' memo. of law in sup-

port of motion for class certification, p. 21; Dearlove affidavit, ¶8.

Fifth, this court is an appropriate forum for the litigation of the claims of the entire class. The court has previously dismissed defendant's petition to dismiss pursuant to 42 Pa.C.S. §5322(e), and also dismissed defendant's motion to reconsider. (See opinions dated July 19, 2002 and December 31, 2002.) The Primedica subsidiary called Primedica Argus Research Laboratories is located in Pennsylvania, and is where the representative parties worked. Mr. Dearlove resides in Landenberg, Pennsylvania and Ms. Roberts resides in Philadelphia, Pennsylvania. Complaint, ¶¶1-2. In addition, the court has jurisdiction over the class members who reside in Pennsylvania as well as those class members who submit to the court's jurisdiction.

Sixth, in view of the complexities of the issues or the expenses of litigation, generally speaking, the separate claims of individual class members would not support separate actions. The ability of an individual class member to bring a lawsuit against the defendants would require substantial financial resources. Even if some class members were able to persuade firms to take their cases on a contingent fee basis, there would likely be many left without willing counsel or financial resources to bring their claims. These claims, in addition to all of the smaller damage claims of others, would likely go unlitigated.

Regarding the seventh factor, the plaintiffs assert that it is not likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action. The plaintiffs estimate that the total damages for the class will be approximately $5

million, with average damages per class member totaling $7,800.[11] Pltfs' memo. of law in support of motion for class certification, p. 8. The defendant does not challenge this factor of the analysis. Assuming plaintiffs' estimate of average damages per individual class member, the court agrees that the amount recovered by each class member will be sufficiently large to justify the expense and effort of administering this action as a class action.

## CONCLUSIONS OF LAW

(1) Upon consideration of Rules 1702, 1707, 1708 and 1709 of the Pennsylvania Rules of Civil Procedure, the court finds that the prerequisites for certification of this action as a class action have been satisfied.

(2) The court grants the plaintiffs' motion for class certification and certifies this case as a class action for each of the causes of action alleged by the plaintiffs.

(3) The class is defined as: "All employees of Primedica Corporation and its subsidiaries who, as of February 7, 2001, had been awarded stock options and who had not yet exercised their options, excluding members of the Primedica management team."[12]

---

11. This figure seems to have been based on the assumption that there were 641 class members. Though the parties now stipulate that the class members would total approximately 625, the plaintiffs' estimate of the average damages per class member is a functional estimate for the purpose of certification.

12. As Rule 1710 of the Pennsylvania Rules of Civil Procedure contemplates, for ease of administration, it may become necessary in the future to divide the class into subclasses. If that is the case, it would be the subject of a supplemental order and memorandum.

(4) Each member of the class is included in the class for now, but each such class member will have an opportunity within a certain time frame, which has yet to be determined, to opt out of the class.

(5) The court will enter a contemporaneous order consistent with this opinion.

## ORDER

And now, December 28, 2004, upon consideration of plaintiffs' motion for class certification, defendant's opposition to it, plaintiffs' reply brief, the certification hearing held on September 14, 2004, all matters of record, and in accord with the opinion being filed simultaneously with this order, as well as Rules 1702, 1707, 1708 and 1709 of the Pennsylvania Rules of Civil Procedure, it is ordered that the motion is granted, as follows:

(1) This action is certified as a class action for each of the causes of action alleged in the plaintiffs' complaint.

(2) The class is defined as "All employees of Primedica Corporation and its subsidiaries who, as of February 7, 2001, had been awarded stock options and who had not yet exercised their options, excluding members of the Primedica management team." (The parties have jointly stipulated that the class will total approximately 625 persons.)

(3) Each member of the class is included in the class for now, but each such class member will have an opportunity within a certain time frame, which has yet to be determined, to opt out of the class.

(4) Plaintiffs George Dearlove and Annaregina Roberts will serve as class representatives.

(5) Within 35 days from the entry of this order, the parties shall submit to the court proposed forms and

methods to notify the class of this action, as well as the methods by which class members may elect in writing to be excluded from the class.