# Crepeau v. Rite Aid Inc.

*Mark Cuker,* for plaintiff.

*Charles Reitmeyer, Kevin Mahoney, Joseph Cancila, Francis Morrisey, Paula Ketchum* and *Jonathan Fischbach,* for defendant.

BERNSTEIN, *J.,* May 3, 2005—Presently before this court is plaintiff's motion for class certification arising from plaintiff's purchase of alleged "counterfeit" Lipitor, a cholesterol reducing drug, from a Rite Aid pharmacy. Plaintiff filed a class action complaint on September 9, 2003. Plaintiff alleges two causes of action, breach of express warranty and unjust enrichment.

## FINDINGS OF FACT

(1) Lipitor is a cholesterol reducing drug.

(2) Beginning in March of 2003, Rite Aid began purchasing their supply of Lipitor, from H.D. Smith, an authorized distributor of the drug.

(3) The term "authorized distributor" entitles the distributor to purchase drugs directly from the manufacturer. Lipitor is manufactured by Pfizer, Inc.

(4) On May 23, 2003, H.D. Smith sent a letter to Rite Aid informing them that a portion of the Lipitor that Rite Aid had purchased may be counterfeit. H.D. Smith suggested that a recall of all Lipitor which Rite Aid had purchased from April 22, 2003 to May 23, 2003, ought to be instituted. At that time, a substantial quantity of Lipitor received from H.D. Smith had already been sold to the public through Rite Aid pharmacies.

(5) During this time period, 330,000 customers had purchased Lipitor at Rite Aid pharmacies. Each one of the 330,000 customers was sent a recall notice instructing them to return all remaining Lipitor pills to their local Rite Aid pharmacy so that their pills could be exchanged for new Lipitor at no extra charge.

(6) Not more than 20 percent of the 10 mg tablet Lipitor, and not more than 6 percent of the 20 mg tablets, sold during the recall period were counterfeit.

(7) It is impossible to determine which of the 330,000 individuals who purchased the Lipitor from Rite Aid received any counterfeit pills.

(8) On April 29, 2003, named plaintiff, Christopher Crepeau purchased 20-milligram Lipitor from a Rite Aid pharmacy in Michigan.

(9) Mr. Crepeau had finished his entire prescription before he received the recall notice and was therefore unable to exchange any pills.

(10) There is no proof that any medication Mr. Crepeau took was counterfeit Lipitor.

(11) It is impossible to prove whether any individual who purchased Lipitor from Rite Aid Pharmacies in 2003 received counterfeit Lipitor.

(12) No one who purchased Lipitor from Rite Aid during 2003 suffered any known adverse effects.

(13) Plaintiff has defined the proposed class as "all residents of the United States except Louisiana who purchased counterfeit Lipitor tablets from Rite Aid in the year 2003, and who did not manifest physical injuries as a result of ingesting these tablets."

## CONCLUSIONS OF LAW

(1) To prevail on a claim for breach of warranty under the Pennsylvania Uniform Commercial Code, a plaintiff must establish, by a preponderance of the evidence that a breach of warranty occurred and that the breach was the proximate cause of the specific damages sustained. *Price v. Chevrolet Motor Division of GMC,* 765 A.2d 800, 810 (Pa. Super. 2000).

(2) In Pennsylvania, "To recover based on unjust enrichment, there must be . . . (1) an enrichment and (2) an injustice if the unenriched party does not recover for that enrichment. See *Chesney v. Stevens,* 435 Pa. Super. 71, 77 n.4, 644 A.2d 1240, 1243 n.4 (1994). 'The most significant requirement for recovery is that the enrichment

of the defendant is unjust.' *Id.*" *Cambria-Stoltz Enterprises v. TNT Investments,* 747 A.2d 947, 953 (Pa. Super. 2000).

(3) Plaintiff bears the burden of proving those contentions which entitle him to relief.

(4) There can be no compensation to individuals who have not proven any loss.

## DISCUSSION

The sole issue before this court is whether the prerequisites for certification as stated in Pa.R.C.P. 1702 are satisfied. The purpose behind a class action lawsuit is "to provide a means by which the claims of many individuals could be resolved at one time, thereby eliminating the possibility of repetitious litigation and providing small claimants with a method to seek compensation for claims that would otherwise be too small to litigate." *DiLucido v. Terminix International Inc.,* 450 Pa. Super. 393, 397, 676 A.2d 1237, 1239 (1996). For a suit to proceed as a class action, Rule 1702 of the Pennsylvania Rules of Civil Procedure requires that five criteria be met:

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709;

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

Rule 1708 of the Pennsylvania Rules of Civil Procedure requires:

"In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth [below]:

"(a) Where monetary recovery alone is sought, the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation, already commenced by or against members of the class involving any of the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action."

The burden of showing each of the elements in Rule 1702 is initially on the moving party. This burden "is not heavy and is thus consistent with the policy that 'decisions in favor of maintaining a class action should be liberally made.'" *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 45, 501 A.2d 635, 637 (1985). The moving party need only present evidence sufficient to make out a prima facie case "from which the court can conclude that the five class certification requirements are met." *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002) (quoting *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 130, 451 A.2d 451, 455 (1982)).

In other contexts, the prima facie burden has been construed to mean "some evidence," "a colorable claim," "substantial evidence," or evidence that creates a rebuttable presumption that requires the opponent to rebut demonstrated elements. In the criminal law context, "the

prima facie standard requires evidence of the existence of each and every element." *Commonwealth v. Martin,* 727 A.2d 1136, 1142 (Pa. Super. 1999), *alloc. denied,* 560 Pa. 722, 745 A.2d 1220 (1999). However, "the weight and credibility of the evidence are not factors at this stage." *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa. Super. 2001).

In the family law context, the term " 'prima facie right to custody' means only that the party has a colorable claim to custody of the child." *McDonel v. Sohn,* 762 A.2d 1101, 1107 (Pa. Super. 2000). Similarly, in the context of employment law, the Commonwealth Court has opined that a prima facie case can be established by "substantial evidence" requiring the opposing party to affirmatively rebut that evidence. See *e.g., Williamsburg Community School District v. Commonwealth, Pennsylvania Human Relations Commission,* 99 Pa. Commw. 206, 512 A.2d 1339 (1986).

Courts have consistently interpreted the phrase "substantial evidence" to mean "more than a mere scintilla," but evidence "which a reasonable mind might accept as adequate to support a conclusion." *SSEN Inc. v. Borough Council of Eddystone,* 810 A.2d 200, 207 (Pa. Commw. 2002). In *Grakelow v. Nash,* 98 Pa. Super. 316 (1929), a tax case, the Superior Court said: "To ordain that a certain act or acts shall be prima facie evidence of a fact means merely that from proof of the act or acts, a rebuttable presumption of the fact shall be made; . . . it attributes a specified value to certain evidence but does not make it conclusive proof of the fact in question."

"Class certification is a mixed question of fact and law." *Debbs v. Chrysler Corp.,* 810 A.2d at 154 (Pa. Super. 2002). The court must consider all the relevant testimony, depositions and other evidence pursuant to Rule 1707(c). In determining whether the prerequisites of Rule 1702 have been met, the court is only to decide who shall be the parties to the action and nothing more. The merits of the action and the plaintiffs' right to recover are excluded from consideration. 1977 Explanatory comment to Pa.R.C.P. 1707. Where evidence conflicts, doubt should be resolved in favor of class certification. In making a certification decision, "courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions, and judicial notice." *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454-55. Accordingly, this court must refrain from ruling on plaintiff's ultimate right to achieve any recovery, the credibility of the witnesses and the substantive merits of defenses raised.

"The burden of proof to establish the five prerequisites to class certification lies with the class proponent; however, since the hearing on class certification is akin to a preliminary hearing, it is not a heavy burden." *Professional Flooring Co. v. Bushar Corp.,* 61 D.&C.4th 147, 153 (Montg. Cty. 2003), citing *Debbs v. Chrysler Corp.,* 810 A.2d 137, 153-54 (Pa. Super. 2002); *Janicik v. Prudential Insurance Co. of America,* 305 Pa. Super. 120, 130, 451 A.2d 451, 455 (1982). See also, *Baldassari v. Suburban Cable TV Co. Inc.,* 808 A.2d 184, 189 (Pa. Super. 2002); *Cambanis v. Nationwide Insurance Co.,* 348 Pa. Super. 41, 501 A.2d 635 (1985). The prima facie burden of proof standard at the class certification stage is met by a qualitative "substantial evidence" test.

Our Superior Court has instructed that it is a strong and oft-repeated policy of this Commonwealth that decisions applying the rules for class certification should be made liberally and in favor of maintaining a class action. *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 407, 615 A.2d 428, 431 (1992). See also, *Janicik,* 305 Pa. Super. at 128, 451 A.2d at 454, citing and quoting *Esplin v. Hirschi,* 402 F.2d 94, 101(10th Cir. 1968) ("in a doubtful case . . . any error should be committed in favor of allowing the class action").

Likewise, the Commonwealth Court has held that "in doubtful cases any error should be committed in favor of allowing class certification." *Foust v. SEPTA,* 756 A.2d 112, 118 (Pa. Commw. 2000). This philosophy is further supported by the consideration that "[t]he court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied." *Janicik,* 305 Pa. Super. at 129, 451 A.2d at 454.

Within this context, the court will examine the requisite factors for class certification.

### I. Numerosity

To be eligible for certification, appellant must demonstrate that the class is "so numerous that joinder of all members is impracticable." Pa.R.C.P. 1702(1). A class is sufficiently numerous when "the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should such

plaintiffs sue individually." *Temple University v. Pennsylvania Department of Public Welfare,* 30 Pa. Commw. 595, 603, 374 A.2d 991, 996 (1977) (123 members sufficient); *ABC Sewer Cleaning Co. v. Bell of Pennsylvania,* 293 Pa. Super. 219, 438 A.2d 616 (1981) (250 members sufficient); *Ablin Inc. v. Bell Telephone Company of Pennsylvania,* 291 Pa. Super. 40, 435 A.2d 208 (1981) (204 plaintiffs sufficiently numerous). Appellant need not plead or prove the actual number of class members, so long as he is able to "define the class with some precision" and provide "sufficient indicia [to the court] that more members exist than it would be practicable to join." *Janicik,* 305 Pa. Super. at 132, 451 A.2d at 456.

In order to demonstrate numerosity, a plaintiff must show more than just a large number of potential plaintiffs. To satisfy this criterion, the class must be both numerous and identifiable.[1] For the court to determine if there are enough class members to warrant a class action, the class definition must be clear enough for the court to reasonably ascertain who the potential class members are. Without a clear class definition it is impossible for the court to determine numerosity because the identity of the individuals to be included in the class cannot be determined. The Pennsylvania Superior Court has held that "where the class definition is so poorly established that the court cannot even discern who the potential class members are, the numerosity criterion has not been met."[2]

---

1. See for example, *Foodarama Supermarkets Inc. v. American Insurance Co.,* 43 D.&C.4th 467, 493 (2000).

2. *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 408, 615 A.2d 428, 430 (1992).

Plaintiff has defined the class as "all residents of the United States except Louisiana who purchased counterfeit Lipitor tablets from Rite Aid in the year 2003, and who did not manifest physical injuries as a result of ingesting these tablets." Plaintiff can, through Rite Aid's records, determine who purchased Lipitor from Rite Aid in 2003. These are the 330,000 individual purchasers who received recall letters from Rite Aid. However, plaintiff cannot now, nor can he ever, discern or identify which of Rite Aid's customers actually received *counterfeit* Lipitor. Plaintiff cannot exclude any of these 330,000 Rite Aid customers from the class. Everyone who purchased Lipitor received a recall notice, but at least 80 percent of the Lipitor sold to these customers was authentic. To define the class in order to adequately demonstrate numerosity, plaintiff would have to exclude from all 330,000 individuals who received a recall notice, everyone who received genuine Lipitor. Only those who received counterfeit Lipitor can possibly present any claim. This reduction is impossible. Plaintiff's class as defined is flawed because it necessarily includes all those who purchased genuine Lipitor. Plaintiff has created a class which is detrimentally over-inclusive. As a result neither plaintiff nor the court can ever determine class identity or size. For these reasons it is impossible for the plaintiff to satisfy the numerosity requirement, absent certifying a class of all the 330,000 individuals who received a recall notice, most of whom received exactly what they paid for.

For the reasons stated above, the criteria of Rule 1702(1) have not been met by the proofs presented at the class certification hearing or the record presented therein.[3]

---

3. Plaintiff has moved to amend the complaint to redefine the class as, "All residents of the United States except Louisiana, who purchased

## II. Commonality

The second prerequisite for class certification is that "there are questions of law or fact common to the class." Pa.R.C.P. 1702(2). Common questions exist "if the class members' legal grievances arise out of the 'same practice or course of conduct' on the part of the class opponent." *Janicik, supra* at 133, 451 A.2d at 457. Thus, it is necessary to establish that "the facts surrounding each plaintiff's claim must be substantially the same so that proof as to one claimant would be proof as to all." *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). However, where the challenged conduct affects the potential class members in divergent ways, commonality may not exist. *Janicik, supra* at 133 n.5, 451 A.2d at 457 n.5.

"While the existence of individual questions is not necessarily fatal, it is essential that there be a predominance of common issues shared by all class members which can be justly resolved in a single proceeding." *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa. Super.

---

counterfeit Lipitor tablets from Rite Aid in the year 2003 and who did not manifest physical injuries as a result of ingesting these tablets. For purposes of this definition, 'counterfeit;' Lipitor means Lipitor which Rite Aid recalled or sought to recall in letters addressed to its customers in May and June of 2003." This motion, which was denied February 1, 2005, does not remedy plaintiff's class definitional failure. The same issues arise again with this definition. Rite Aid sent recall letters to everyone who purchased Lipitor. No one including Rite Aid knows which pills were counterfeit. Therefore, adding to the above a definition of the word "counterfeit" does nothing to assist this court in determining who is a member of the class. Indeed, with or without the amendment, the requested class can only consist of everyone who purchased Lipitor, even if the purchaser received the genuine article.

441, 452, 500 A.2d 1137, 1142 (1985). In examining the commonality of the class' claims, a court should focus on the cause of injury and not the amount of alleged damages. "Once a common source of liability has been clearly identified, varying amounts of *damages* among the plaintiffs will not preclude class certification." See *Weismer by Weismer v. Beech-Nut Nutrition Corp.,* 419 Pa. Super. 403, 409, 615 A.2d 428, 431 (1992). (emphasis in original) Where there exists intervening and possibly superseding causes of damage however, liability cannot be determined on a class-wide basis. *Cook v. Highland Water and Sewer Authority,* 108 Pa. Commw. 222, 231, 530 A.2d 499, 504 (1987).

At the class certification it was stipulated that at a maximum, 20 percent of the 10 mg Lipitor and 5.7 percent of the 20 mg Lipitor sold to the public were counterfeit. It was also determined that no one will be able to prove who actually received any of the counterfeit pills. Rite Aid sent recall letters to everyone who purchased Lipitor during a specified time frame. Therefore, individuals who received a recall letter may have received all counterfeit pills, no counterfeit pills or only a percentage of counterfeit pills. Indeed, most purchasers received the genuine article. There are no common issues between the maximum 20 percent of class members who received counterfeit Lipitor and the remaining 80 percent of class members who received a genuine product.

Plaintiff was given the opportunity to present a proposed jury verdict form to address the issue of commonality. For the claim of breach of express warranty, defendant provided the following verdict form:

(1) Did Rite Aid breach its express warranty (that each pill sold to the consumer as "Lipitor" was guaranteed to be genuine Lipitor manufactured by Pfizer Inc.)?

(2) If your answer to no. 1 above is "yes," was the value of pills sold to Rite Aid less than the retail price Rite Aid charged for genuine Lipitor manufactured by Pfizer Inc.?

(3) If your answer to no. 2 above is "yes," what is the percentage reduction in the value of the pills attributed to the breach of express warranty?

These proposed interrogatories further demonstrate the failure of the class definition. Instead of requiring a damages amount in response to interrogatory no. 3, plaintiff asks for a percentage reduction in value. However, Pennsylvania law does not permit a partial damages verdict in contract. There is no percentage theory or partial recovery in our law.

It would be clearly unjust for the defendant to refund all purchases since at least 80 percent of the Lipitor sold by Rite Aid was genuine. Therefore, plaintiff's theory requires that damages be calculated on a percentage basis. Jury interrogatory no. 3 implies that everyone who purchased any Lipitor, counterfeit or genuine, during the class period will share in any recovery. This means that those who received counterfeit Lipitor will receive only a percentage of their "loss" while those who received the genuine product would receive a windfall. In contract, either a plaintiff is fully compensated for an injury or not compensated at all. Under plaintiff's scheme, individuals who received genuine Lipitor are being compensated for injuries they did not sustain while individu-

als who received counterfeit Lipitor are not being compensated for all the injuries they did sustain. This is not only unjust but unsupported by Pennsylvania law. This over-inclusive "percentage theory of recovery" reflects plaintiff's insurmountable problem of class definition.

The class is not defined as everyone who received a recall notice from Rite Aid. It purports to include only those who received counterfeit Lipitor. It is necessary at some point to ascertain exactly who of the 330,000 individuals sustained any injury.[4] Because plaintiff cannot exclude from the class those individuals who received exactly what they paid for, the court is left with the unanswered individual questions of fact as to who is entitled to any recovery because they received a counterfeit product, and, of those entitled individuals, what is the extent of their injury.

For the claim of unjust enrichment plaintiff offered the following verdict form:

(1) Do you find that the parties were mistaken as to an assumption of fact which was the basis of their contract?

(2) If your answer to no. 4 is "yes," did Rite Aid receive and retain profits under the contract?

(3) If so, what is the amount of the profits that Rite Aid received and retained?

Although the plaintiff purports not to define the class as everyone who received a recall notice from Rite Aid,

---

4. Even though plaintiff has attempted to redefine the class as everyone who received a recall notice from Rite Aid, this does not change the fact that 330,000 individual questions remain, namely "who received counterfeit Lipitor?"

this proposed set of jury interrogatories belies the fiction. Not even 330,000 mini-trials could determine which of the purchasers are entitled to any compensation, plaintiffs are unable to show who of the 330,000 individuals who received recall notices from Rite Aid are entitled to any "improperly retained" profits. Likewise, plaintiff cannot isolate profits from the "counterfeit" Lipitor. Rite Aid cannot lawfully be required to disgorge profits made from selling genuine Lipitor. Yet, the proposed interrogatories require just that.

Even if plaintiffs were awarded all the profits made by Rite Aid from the sale of the Lipitor as the unjust enrichment proposed interrogatories imply, there remains no way to determine how these profits should be distributed. If the profits are distributed evenly among all 330,000 individuals who received recall notices, the recovery will be over-compensating those who received a genuine product and under-compensating those who did not.

For the reasons stated above, the criteria of Rule 1702(2) have not been met by the proofs presented at the class certification hearing or the record presented therein.

### III. Typicality

The third step in the certification test requires the plaintiff to show that the class action parties' claims and defenses are typical of the entire class. The purpose behind this requirement is to determine whether the class representatives' overall position on the common issues is sufficiently aligned with that of the absent class members, to ensure that pursuit of their interests will advance those of the proposed class members. *DiLucido v. Terminix*

*International Inc.,* 450 Pa. Super. 393, 404, 676 A.2d 1237, 1242 (1996).

Plaintiff has admitted that it is impossible to determine if the named plaintiff, Mr. Crepeau, received counterfeit Lipitor. It is impossible to determine if the named plaintiff is even a member of any class plaintiff feels is entitled to relief. Effectively, plaintiff claims that Mr. Crepeau is a class member because everyone who purchased Lipitor, counterfeit or genuine, is a class member and therefore entitled to compensation. However, plaintiff is attempting to use words without meaning. The words "counterfeit Lipitor" have meaning only if it is distinguishable from the words "genuine Lipitor." Plaintiff cannot now nor will he ever be able to prove that distinction. Factually, purchasers must be treated the same whether they received counterfeit Lipitor or genuine Lipitor.

Plaintiff, Mr. Crepeau is a class member only if the word counterfeit is a word without meaning. Mr. Crepeau is entitled to compensation only if all purchasers, those who received "counterfeit" and all purchasers who received "genuine" Lipitor are entitled to compensation. Even Mr. Crepeau's individual action must fail because he cannot prove that he did not receive exactly what he paid for, namely, genuine Lipitor.[5] A class representative cannot be typical if he can never prove his individual case. Therefore, for the reasons stated above, the criteria of Rule 1702(3) have not been met by the proofs presented at the class certification hearing of the record presented therein.

---

5. This is why plaintiff's logic requires the novel suggestion that the burden of proof should shift to defendant.

## IV. Adequacy of Representation

For the class to be certified, this court must also conclude that the plaintiffs "will fairly and adequately assert and protect the interests of the class." Pa.R.C.P. 1702(4). In determining whether the representative parties will fairly and adequately represent the interests of the class, the court shall consider the following:

"(1) Whether the attorney for the representative parties will adequately represent the interests of the class,

"(2) Whether the representative parties have a conflict of interest in the maintenance of the class action, and

"(3) Whether the representative parties have or can acquire financial resources to assure that the interests of the class will not be harmed." Rule 1709.

"Until the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Janicik,* 305 Pa. Super. at 136, 451 A.2d at 458. Here, defendants do not challenge plaintiffs' counsels' skill and therefore, the court presumes that counsel is skilled in their profession. While the adequacy of the named plaintiff has been addressed in the typicality section, it should be noted that plaintiff's counsel herein has valiantly, albeit unsuccessfully, attempted to define a class, and is clearly adequate counsel.

## V. Fair and Efficient Method of Adjudication

The final criteria under Pa.R.C.P. 1702 is a determination of whether a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

## 1. Predominance of Common Questions of Law and Fact

The most important requirement in determining whether a class should be certified under 1702(a)(5) and 1708(a)(1) is whether common questions of law and fact predominate over any question affecting only individual members. In addition to the existence of common questions of law and fact, plaintiffs must also establish that the common issues predominate. The analysis of predominance under Rule 1708(a)(1) is closely related to that of commonality under Rule 1702(2). *Janicik, supra,* 305 Pa. Super. at 141, 451 A.2d at 461.

As discussed above since it is impossible for plaintiff to prove damages on a class-wide basis because of plaintiff's inability to meaningfully define the class, or ascertain who is entitled to damages. Common questions of fact do not predominate.

## 2. The Existence of Serious Management Difficulties

Under Pa.R.C.P. 1708(2), a court must also consider the size of the class and the difficulties likely to be encountered in the management of the action as a class action. While a court must consider the potential difficulties in managing the class action, any such difficulties generally are not accorded much weight. Problems of administration alone ordinarily should not justify the denial of an otherwise appropriate class action, for to do so would contradict the policies underlying this device. *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972). Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve what-

ever management problems the litigation may bring. *Id.* (citing *Buchanan v. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117 (1974)).

Plaintiff has defined his class as "all residents of the United States except Louisiana who purchased counterfeit Lipitor tablets from Rite Aid in the year 2003 . . . ." Plaintiff admits that he does not know, and can never know, who purchased the counterfeit Lipitor tablets. Plaintiff's case as presented implicitly requires a shift in the burden of proof. Plaintiff cannot prove that any individual who purchased Lipitor from Rite Aid in the year 2003 got anything different than what they paid for. To try this case on a class basis would be to shift the burden of proof to defendant to show which of the class members received genuine Lipitor. Only with this shift in the burden of proof can plaintiff maintain that there are common questions of fact. The following discussion took place between the court and plaintiff's counsel at the certification hearing:

"The Court: What if Rite Aid can prove somebody got Lipitor; do they still have to pay[?]

"Mr. Cuker: If Rite Aid can prove that somebody got Lipitor, they wouldn't have to pay. I think judge, based on the evidence you heard, Rite Aid can't do that for anybody."

Such a burden shift is unprecedented in Pennsylvania and cannot relieve the plaintiff of his burden to prove who of the 330,000 people who purchased Lipitor did not get a genuine certifiable product.

Although this factor usually is not a basis for denial of class certification, plaintiff's shift in the burden of proof

does not allow for a fair method of adjudication. In addition, plaintiff's aforementioned insurmountable damage distribution problems present this court with severe manageability difficulties. Therefore, plaintiff has not met his burden for showing manageability.

### 3. Potential for Inconsistent Adjudications

Pennsylvania Rule 1708(a)(3) also requires a court to evaluate whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class. In considering the separate effect of actions, the precedential effect of a decision is to be considered as well as the parties' circumstances and respective ability to pursue separate actions. *Janicik,* 305 Pa. Super. at 143, 415 A.2d at 462.

Due to the fact that no one, on a class or individual basis, can prove that they suffered any injury as a result of defendant's actions, individual inconsistent adjudications are unlikely but need not be addressed since certification is being denied on other grounds.

### 4. Extent and Nature of Any Preexisting Litigation and the Appropriateness of This Forum

Under Pa.R.C.P. 1708(a)(4), (a)(5), and (a)(6) a court should consider the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues, the appropriateness of the chosen forum and whether the amounts recoverable justify a class action. The court has been advised of no

prior litigation pending on this issue. This court finds that this forum is appropriate to litigate the claim.

Rule 1708 also requires the court to consider the amount of damages sought by the individual plaintiffs in determining the fairness and efficiency of a class action. Thus, a court must analyze whether in view of the complexities of the issues or the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate amounts. Pa.R.C.P. 1708(a)(6). Alternatively, the rules require that the court analyze whether it is likely that the amounts which may be recovered by individual class members will be so small in relation to the expense and effort of the administering the action as not to justify a class action. Pa.R.C.P. 1708(a)(7). This criteria is rarely used to disqualify an otherwise valid class action claim. See *Kelly v. County of Allegheny,* 519 Pa. 213, 215, 546 A.2d 608, 609 (1988) (Trial court erred in refusing to certify a class on the grounds that the class members' average claim was too small in comparison to the expenses incurred.). However, in *Klusman v. Bucks County Court of Common Pleas,* (128 Pa. Commw. 616, 631, 546 A.2d 526, 534 (1989)) the court said: "Where the issue of damages does not lend itself to a mechanical calculation, but requires separate mini-trials of a large number of individual claims, courts have found that the staggering problem of logistics make the damage aspect of the case predominate and renders the class unmanageable as a class action. *State of Alabama v. Blue Bird Body Co. Inc.,* 573 F.2d 309 (5th Cir. 1978)." Certainly herein, the question of whether any individual is entitled to any damages predominates and renders the class unmanageable.

Accordingly, having weighed all Rule 1708 requirements, this court finds that a class action is not a fair and efficient method for adjudicating plaintiff's claims.

For the above stated reasons plaintiff's motion for class certification is denied.

## ORDER

And now, May 3, 2005, upon consideration of plaintiff's motion for class certification, all responses in opposition, the respective memoranda, all matters of record, and in accordance with the contemporaneous memorandum opinion, it hereby is ordered and decreed as follows: plaintiff's motion for class certification is denied.